American Express Company *v.* Burke & McGuire.

[61 South. 312.]

1. Carriers. *Interstate shipments.  Delay.  Damages.  Limiting.*

Where for an interstate shipment the carrier gives its receipt limiting its liability to fifty dollars, the shipper can only recover that amount, as damages for the carrier's failure to properly transport and deliver the shipment.

2. CARRIERS. *Delay. Punitive damages.*

In order to hold a carrier liable for punitive damages for delay in the transportation of goods, the shipper must show gross negligence, or wilful or wanton disregard of its duty by the carrier.

3. CARRIERS. *Delay. Special damages. Notice.*

In order to hold a carrier liable for special damages for loss of profits because of a delay in transportation, it must be shown that the carrier had knowledge of the special circumstances attending the shipment which would entitle the shipper to increased damages.

APPEAL from the circuit court of Yazoo county.

HON. W. A. HENRY, Judge.

Suit by Burke & McGuire against the American Express Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

Plaintiff's third instruction was as follows:

"The court instructs the jury that the stipulation in the express receipt that the defendant's liability is limited to fifty dollars is inoperative in this case and must be disregarded."

The express receipt in its original form is filed with the record in this case. It is the usual receipt. The court can examine it.

This case was tried before the decision of the Supreme Court of the United States in the case of *Adams Express Co. v. Croninger,* decided January 6, 1913, and reported in U. S. Supreme Court Advance Sheets for February, 1913.

The court will see that the Supreme Court of the United States has decided that in the case of interstate shipments, this fifty dollars limitation is a valid and binding contract; and, therefore, in so far as the recovery exceeds fifty dollars, it is in violation of the agreement made, because the terms of the agreement were that "the liability of this company is limited to fifty dollars for any shipment," etc.

Certainly if any exception can be read into this contract, which we deny, by way of punitory damages for wilful neglect as charged in the declaration, the terms of the contract exclude clearly any element of special or consequential compensatory damages.

We submit that for the error in giving this instruction if for none other the case must be reversed.

Plaintiff's first instruction is clearly erroneous in that it is a peremptory instruction to find for the plaintiffs in the sum of one hundred and twenty-nine dollars and ten cents because of making the model to be used in the place of the casting shipped. That feature of this instruction is directly in the teeth of the receipt quoted above, and the instruction is erroneous for that reason.

This instruction is also erroneous for the reason that it requires the jury if they believe that failure to deliver the shipment was due to gross negligence or wilful or wanton disregard of duty, to find for the plaintiffs certain definite amounts; rental value of the press while not in use, for four months at twenty dollars per month, eighty dollars; loss of profits on job printing four months at twenty dollars per month, eighty dollars; and the jury in point of fact responded to this instruction because their verdict included an item of one hundred and sixty dollars, rent of press and lost profits.

Therefore, this one hundred and sixty dollars was the result of the fixation by the court of the exact amounts of rental and lost profits. This was the function of the jury, to fix these amounts, and the court has no right to take the same away from the jury. Reference to pages 30 and 31 will show that the plaintiff, Mr. Burke, did not fix these amounts definitely but only approximately. Therefore, it was for the jury to define and not the court.

In addition to which please observe that the jury found in their verdict a liability both ways. They whipsawed the defendant. First, they charged the defendant eighty dollars as for the rental of the press, and then they turned around and charged the defendant, also, another eighty

dollars for gains and profits and profits lost. It reminds us of a magistrate's judgment which came into our office a few years ago in a suit against the railroad company in which the magistrate entered up a judgment of fifty dollars for the loss of a cow, and also an additional fifty dollars for the loss of the milk that the cow would have given if she had not been killed. An actual case.

Of course if the express company is chargeable as for the rent of the machine, the plaintiff is to be considered as having rented his machine and not as being in the active use of it at the same time.

The court will observe further that the nature of these instructions as to these items is mandatory provided the jury believe there was gross negligence. Evidently, therefore, this instruction was given contemplating these two items as special and consequential damages, not as punatory damages.

. Now the record in this case is not in the attitude to authorize the imposition of special and consequential damages. The ingenious attorney for the plaintiffs, in his declaration, endeavors to lay the predicate for such a claim, and by the suggestions of his examination of the witness, endeavors to follow it up on the idea, apparently, that observation of the fact that this was a broken arm would of itself carry notice to the express company that there was a special emergency shipment.

But there is no justification for that position in the law, and it is not pretended that in making the shipment any express notice was given to the company.

The law on this subject is well settled in this state. *Silver* v. *Kent,* 60 Miss. 124; *American Express Co.* v. *Jennings,* 86 Miss. 329; see also note to the above cases, 109 Am. St. Rep. 713.

The second instruction given in behalf of the plaintiff authorized the jury to assess punitive damages if they believed that the failure of the defendant to deliver the shipment was due to its gross negligence or a wilful and wanton disregard of its duty to the plaintiffs.

The imposition of punitory damages on common carriers for failure to deliver goods, seems to be authorized under certain conditions by the case of *Silver* v. *Kent,* cited above, but the court will observe that the conditions are entirely different from those existing in this case. *Silver* v. *Kent* goes no further than to hold that wilful, wanton and oppressive failure to deliver goods may form the basis of punitory damages against the carrier in a case where the carrier has the goods in its possession and is able to deliver them but wilfuly and wantonly and oppressively refuses to do so. In that case the refusal was with the goods in possession, knowing that the party was greatly in need of them, and they were wrongfully withheld and wilfully withheld under an unlawful demand for storage charges—which is entirely a different proposition from the one at bar.

The only proof in the case at bar forming the basis for a claim for punitory damages, is found scattered along through the testimony of the two witnesses, Mr. Burke and Mr. McGuire. Mr. Burke puts it at the strongest on pages 28 and 29. It will there be seen that he stated that about two weeks after the shipment was made, he found out that it had not been delivered, and he began to go to see the express agent at Yazoo City about it, and here is as far as he went in his testimony. The express agent said he was doing all he could; be displayed an indifferent kind of way; he did not seem to care whether they found it or not; he was indifferent; did not care. And that is as far as the testimony goes.

Witness does not state that the express agent ever said to him that he did not care; nor does he state that the express agent ever did or said anything to him of an improper character. He seems to resent the fact that the agent did not take as much interest in it as he thought the agent ought to have taken; that is all there is about it. He states the agent said to him that he did not think the tracer would do much good. He also shows that the agent suggested to him the having of a man to come

there and fix a model as a means of his getting out of the dilemma.

The testimony of the two agents of the express company shows, without contradiction, that in some way or other the shipping tag had gotten detached from these castings; they were nothing but a broken iron rod, tied together with twine strings. There was nothing in the nature of the property to impress anyone with the idea that they were of any special importance. It was a long time before they were found, having gone astray with out a tag, but finally they were found and sent to Jackson in accordance with instructions received to that effect.

We submit, in conclusion, that there was nothing in this case to justify the imposition of punitory damages.

*E. L. Brown,* for appellee.

The Question of Punitive Damages: We take up this question first, because a consideration of the facts on which it depends is important to the consideration of the two items of eighty dollars each, and one statement of fact will suffice for the consideration of the three items.

If the breach of the contract was wanton, reckless, or oppressive, that is to say, such as, though no express malice be shown, the conduct of the carrier "amounted to wilfulness," the three items are recoverable. *Silver* v. *Kent,* 60 Miss. 124; *Jennings* v. *Express Co.,* 86 Miss. 340.

For the purpose of this consideration, too, we accept the statement of counsel for appellant that "*Silver* v. *Kent* goes no further than to hold that wilful, wanton, and oppressive failure to deliver goods may form the basis of punitory damages against the carrier, in a case where the carrier has the goods in its possession and is able to deliver them, but wilfully, wantonly and oppressively fails to do so." This qualification makes that case squarely applicable here; the failure was wilful, was wanton, and was oppressive, and the goods could have been delivered.

The possession of the goods never left the appellant; it, with full knowledge of the importance of delivery, informed the shipper that it "had about dropped the matter; it looked like they were not going to find it," Mr. McGuire says.  This was literally wilfulness; the only effort made for four months, was to "send out on regular form of tracer to the delivery office;" and then, getting a diagram and a "gripper," like the one attached to the arm, "tried to trace from this to the over and short department," and this, "in the usual manner;" the tracer sent was simply an abstract of the billing, with the request, "please show delivery," says Mr. Howard, the agent; this lack of concern, with full knowledge of the fact that shippers were "tied up there, we had to have another piece made by it," as Mr. McGuire says he told the agent, was wantonness; such wilful and wanton conduct, under the circumstances, was .oppressive.  Not a word of this is denied.

On November 22, 1910, the shipment was made; within ten days to two weeks thereafter, the time within which the model could have gone to Westerly, been duplicated, and the new piece returned, the company was told of the nature of the shipment, of its importance, of the damages plaintiffs were sustaining and would sustain; after that, first one, then the other, urged performance of duty, right down to the time of bringing suit; as a last resort, had a, man come from Kansas City to make a model by measurement; they filed suit, four months and one day after the day of shipment, the original declaration being filed April 23, 1911; within three weeks thereafter, the appellant got service of process, started an investigation, located the shipment, and landed it in Jackson, Miss., one thousand miles from where it was found, in its possession.

While tracing as a matter of duty, they failed for three months and two weeks to locate it; lost the "gripper" and "diagram" given to trace by; "about dropped the matter;" because "indifferent, he didn't care;" the agent said "he had sent a tracer and could not do anything with

it, he could not hear from the tracer;'' but, when tracing as a matter of defense, they located the shipment and transported · it a thousand miles safely, within three weeks.

The evidence of Burke, McGuire and Howard shows these facts; that of Kitlinger shows the shipment always "in the possession of the carrier.'' Aside from the irresponsive and, for that reason excluded, statements of Kitlinger, the appellant made no sort of excuse for this outrageous treatment of the shipper.

The carrier, in *Silver* v. *Kent,* was not guilty of onehalf so flagrant violation of duty as here shown; the carrier's clerk was doubtless exasperated or taunted into saying, "I will keep you out of the use of the goods eight days more;'' not so here, when the matter of tracing was "dropped;'' the carrier there was not shown to have known, during the delay of the importance of delivery, as here; the shipper there could get other flour but the shipper here could not get another model; the distinguishing features between the two cases all mark this one as a more aggravated case of wilful, wanton, and oppressive delay.

It was no trouble to find this shipment when necessary for the purpose of a defense; it could have been as easily found and delivered, as a matter of duty. The sum of one hundred dollars punitive damages was an eminently moderate award.

If the foregoing statement shows that the loss was due to negligence, even mere negligence, the limitation of the receipt is inoperative, the rule being that limitation of liability for negligence cannot be contracted against. *Adams Express Co.* v. *Croninger,* Adv. Sheets No. 6, p. 148.

It is inoperative, too, because it is not shown that the rate was based on valuation, or that the schedules of rates were filed with the interstate commerce commission; or that the value was unknown to the carrier; or that the rate was not based on actual value; or that the "limita-

tion" was "in consideration of" the rate. *Adams Express Co.* v. *Croninger, supra.*

The limitation is inoperative, as a defense, because not pleaded; there is no reference, in the pleadings, to the receipt, nor to its terms, either by the plea to the original, or to the amended, declaration. The special contract must have been pleaded, and the carrier must have shown that the loss or damage was within the protection of the limitation. The burden of proof was on appellant. 5 Ency. of Law (2 Ed.), 358, *et seq.; So. Express Co.* v. *Moon,* 39 Miss. 822; *Railroad Co.* v. *Abels,* 60 Miss. 1017; *Johnson* v. *Railroad Co.,* 69 Miss. 191.

If the liability shown were that of an insurer, the limitation is no defense here, because not pleaded. The showing of the failure to deliver makes a *prima facie* case of negligence. *Johnson* v. *Railroad Co., supra.*

The evidence of Mr. Hunter shows that the receipt was not the contract between the parties. He testifies that, the negro porter "did not know the value;" that, "he said he had a shipment for Burke & McGuire that they wanted to pay the charges on;" that, "that was the sum and substance of" what happened. The negro porter, the mere "sentient tool," "authorized to exercise no discretion as representative of the shipper." *Fairchild* v. *Railroad Co.,* 60 Miss. 931. The evidence shows there was no pretense of making a contract; and the receipt, being in the form of both a receipt and a contract, the question of which it was, and whether both, was open to parole proof. *Railroad Co.* v. *Jurey,* 28 Law Ed. 527.

The jury allowed for loss of profits in the job printing business and for rental value of the press for the purpose of printing the weekly publication of the appellees, two separate items of damages. Counsel for appellee are mistaken in putting us and the circuit judge in the attitude of the justice of the peace who awarded fifty dollars for the loss of the cow and fifty dollars for the loss of her milk. The profits were lost by reason of being unable to do job printing, the profits of which would have been

eighty dollars; the rental value of the use of their press, or that of a neighbor was for the publication of their newspaper, at five dollars per week for four months.

These items were not within the contemplation of the parties at the time the contract was made; we make no claim that there was then given any special notice of them.; but they were the direct and necessary effect of the breach of the contract, and were actual damages thereby sustained. They were "remote" damages, only in the sense of not being within contemplation of the carrier at the time of making the contract; but they were the absolutely proximate result of the breach. They were actual, and not punitive, damages. They would be denied, in case of mere negligence in failure to deliver, because the consequences of the breach, not being known to the carrier at the time of shipment, were not contracted against, but they are recoverable, in case of wilful, or wanton, or oppressive circumstances, as actual damages, though not contemplated at the time of making the contract. They are compensation for loss, and possess no element of punitory damages; they are recoverable, as a matter of right, and not in the discretion of the jury, under circumstances which would authorize the jury, in its discretion, to award punitory damages. The bringing of the damages within the contemplation of the parties does not touch the question of proximate cause of damages. *Silver* v. *Kent,* 70 Miss. 124; *Express Co.* v. *Jennings,* 86 Miss. 340; *Railroad Co.* v. *Christmas,* 89 Miss. 699.

Hence, it was not error to tell the jury that, if they believed the appellant wilfully, wantonly, or oppressively, refused to deliver, they "must" assess, not "may" assess, the items of damages.

Argued orally by *E. Mayes,* for appellant and *E. L. Brown,* for appellee.

Reed, J., delivered the opinion of the court.

Burke & McGuire delivered to the American Express Company for shipment a part of a printing press, consist-

ing of a crooked casting, called an arm. It seems that the arm was broken, and that it was necessary to obtain a new one in order to run the press. It was shipped from Yazoo City to C. B. Cottrell & Sons Company, at Westerly, R. I. It was to be used as a model in the manufacture of a new arm. The express company failed to deliver it. This was ascertained when Burke & McGuire asked Cottrell & Sons Company about the return of the new article. Burke & McGuire then notified the express company that the arm had not been received by Cottrell & Sons Company. The express company started tracers, but the arm was not found until about four months after it was forwarded. In truth, it was not located by the express company until suit had been brought by Burke & McGuire.

It is claimed by appellees that the agents of the express company were indifferent and slow in making an effort to locate the arm, and they evidenced a lack of interest in the whole matter, and did not use sufficient diligence. The appellant's testimony showed that the castings were fastended together with a twine string and had a shipping tag tied thereon, which tag became detached, and that by reason thereof the shipment went astray. The articles were finally found and sent to Jackson, Miss., in accordance with an understanding between the parties. Appellees in their declaration claim recovery for (a) the value of the castings as a model, which was the expense of bringing on a skilled machinist to make a new article; (b) loss of profits, etc., while the press was idle; and (c) exemplary damages. The appellant pleaded, besides the general issue, that the shipment was made under the common express receipt limiting its liability to fifty dollars, except by special notice and contract. Upon the trial of the case a verdict was rendered by the jury awarding appellees damages as follows: (a) Value of the broken castings as a model, one hundred and twenty-nine dollars and ten cents; (b) loss of profits from job printing, eighty dollars; (c) rental value of printing press, eighty dollars; (d) punitive damages, one hundred dollars.

· We find that the express receipt given for the shipment contains the following stipulation: ''Nor in any event shall this company be held liable or responsible, nor shall any demand be made upon it, beyond the sum of fifty dollars upon any shipment of one hundred pounds or less, and for not exceeding fifty cents per pound upon any shipment weighing more than one hundred pounds, and the liability of the express company is limited to the value above stated unless the just and true value is declared at the time of shipment, and the declared value in excess of the value above specified is paid for, or agreed to be paid for, under this company's schedule of charges for excess value.'' This is in the body of the receipt. There is plainly printed at the foot of the receipt the following: ''The liability of this company is limited to fifty dollars for any shipment of one hundred pounds or less, or to fifty cents per pound for any shipment in excess of one hundred pounds, unless the just and true value is greater, and is so stated in this receipt, and an extra charge is paid or agreed to be paid therefor, based upon such higher value.'' We also note that there is printed in large letters at the top of the receipt the following: ''Read the conditions of this receipt.'' This instrument was not only a receipt, but amounted to a contract between the parties.

This case was tried before the decisions were rendered by the United States Supreme Court in the cases of *Adams Express Company* v. *E. H. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. — —, and *Chicago, Burlington & Quincy Ry. Company* v. *H. Fred Miller,* 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. — —, both decided on January 6, 1913. The shipments in these cases were interstate. The United States Supreme Court held in the above cases that in the provisions of section 20 of the Interstate Commerce Act of February 4, 1887 (24 Stat. 386, ch. 104 [U. S. Comp. St. 1901, p. 3169]), as amended by Act June 29, 1906, ch. 3591, sec. 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1911, p. 1304), Congress had manifested a purpose to take possession of the subject of the liability

of carriers for interstate shipments, and that regulations thereunder had superseded all state regulations on the subject. These cases will control the present case. In the Croninger case, Justice Lurton said, in rendering the opinion: "That no inquiry was made as to the actual value is not vital to the fairness of the agreement in this case. The receipt which was accepted showed that the charge made was based upon a valuation of fifty dollars unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission." In the Miller case the suit was brought against the railroad company for the value of a stallion shipped. The receipt or bill of lading placed a value upon the animal of two hundred dollars. The plaintiff claimed that he was, in fact, of the value of two thousand dollars, and judgment was rendered for that amount. The supreme court of Nebraska affirmed the case. The United States Supreme Court reversed that decision, and held that the decision in the Croninger case would control. This court has very recently followed the above decisions of the United States Supreme Court in the case of *J. F. Jones* v. *Southern Express Company,* 61 South. 165.

We do not find in this case that there was such gross negligence, or wilful or wanton disregard of its duty, on the part of the appellant to entitle appellees to punitive damages. We do not see that appellant had such notice or knowledge of special circumstances attending the shipment which would entitle appellees to special or increased damages by reason of the failure to properly transport and deliver the article.

The trial court in the instructions directed the jury to disregard the stipulations in the express receipt limiting the appellant's liability to fifty dollars, and declared the same inoperative in the case. In the light of the decisions of the United States Supreme Court, as above stated, this was error. We conclude that the appellees could only re-

cover in the present case the amount stipulated in the con-
tract—fifty dollars.

Judgment is therefore entered here in favor of ap-
pellees for that amount.

*Affirmed.*