𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

ADAMS EXPRESS COMPANY V. ALLEN.

September 17, 1919.

1.  CARRIERS—*Express Companies—Knowledge of Purpose for which Shipment is to be Used—Hog Cholera Serum—Case at Bar.*— Plaintiff ordered by wire from the State Department of Agriculture hog cholera serum with which to treat his hogs, being apprehensive of cholera among his hogs. The department delivered to defendant a package, containing sufficient hog cholera serum for treatment of plaintiff's hogs, to be transported to plaintiff, and the clerk who delivered the package to defendant personally urged upon the receiving clerk of defendant the importance of the prompt dispatch of the package on the day of delivery. The words "Please Rush" appeared on the face of the express receipt asked of and given by defendant. The package was not started by the express company towards its destination until seven days later, and there was no evidence in the case tending to justify or explain this delay. Defendant's receipt acknowledged receipt of one box hog cholera serum.

    *Held:* That under these circumstances, defendant was charged with notice of the purpose for which the plaintiff had ordered the serum, namely, for use by him as a preventive treatment of his hogs for the disease of hog cholera. An express notice, in so many words, of the use for which the article shipped was intended was not necessary before defendant could be considered as having knowledge of such intended use.

2.  CARRIERS—*Express Companies—Knowledge of Purpose for which Shipment is to be Used—Hog Cholera Serum—Case at Bar.*— It appeared from the evidence that hog cholera serum is used but for one purpose only and that is the purpose in question. In the absence in the record of any evidence showing that the defendant may have had some other understanding of what was the use to which the serum might be put, it must assumed that when defendant was informed that it was hog cholera serum which it was asked to transport, that information also conveyed to it the further information that its intended use was for preventive treatment of hogs for the disease of hog cholera.

3.  CARRIERS—*Knowledge of Use to which Shipment is to be Put.*—
    Special information does not have to be given to a carrier of
    the ordinary and usual use to which an article shipped is to
    be put in order to render the carrier liable for damages re-
    sulting from the loss of such ordinary and usual use, by rea-
    son of unreasonable delay in the transportation of the article.
4.  CARRIERS—*Knowledge of Use to which Shipment is to be Put.*—
    Actual notice to the carrier of the precise use to which the
    article shipped is to be put has never been held by the au-
    thorities on the subject as requisite, except when damages are
    claimed for loss of some special use to which the article was
    intended to be put, different from its usual and ordinary use.
    And, even in such cases, information given the carrier of pe-
    culiar features of an article having a special as well as an
    ordinary use, or that information as given by the name of
    the consignee and the appearance of the article itself, may
    often be sufficient to charge the carrier with knowledge of the
    special use to which the consignee of the goods intends to put
    them.
5.  CARRIERS—*Express Companies—Knowledge of Use to which Hog
    Cholera Serum was to be Put—Case at Bar.*—In the instant
    case any uncertainty in the mind of defendant as to whether
    the consignee was a merchant or dealer in serum, rather than
    the intended user of it, was excluded, for there is nothing in
    the name of the plaintiff, the consignee, as it appears on the
    express receipts, or way bill, in evidence, to suggest that he
    was a merchant or dealer in the serum; and the other evidence
    in the case negatives the idea that there was any merchant
    or dealer in the serum in the State other than the shipper, the
    Department of Agriculture of the State.
6.  EXPRESS COMPANIES—*Damages—General or Special Damages—
    Case at Bar.*—In the instant case, the purpose for which the
    serum was intended to be used, being the ordinary (and indeed
    only) purpose for which it is used, and that purpose being
    actually or constructively known to the defendant at the time
    of the contract of carriage, the damages which the plaintiff re-
    covered for the loss of his hogs by death from hog cholera, by
    reason of the unreasonable delay in the transportation of the
    serum, are general and not special damages. The damages
    arose, not out of any special circumstances not likely to have
    been in contemplation of the parties at the time they made the
    contract, but they arose naturally—that is, according to the
    usual course of things—from the breach of the contract itself,
    and were such as might reasonably be supposed to have been
    in the contemplation of both parties at the time they made
    the contract, as the probable result of the breach of it.

7. CARRIERS—*Damages—Knowledge of Use of Article Shipped.*— Whenever either the object of the sender is specially brought to the notice of the carrier, or circumstances are known to him from which the object ought in reason to be inferred, so that it may be taken to have been within the contemplation of the parties, damages may be recovered for the natural consequences of the failure of that object.

8. CARRIERS—*Express Companies—Limitation of Liability—Negligence of Carrier.*—In the instant case it was not entirely clear that the contract attempted to limit the liability of the carrier; but, if it were conceded that the contract of carriage attempted to limit the liability of the defendant to the sum of fifty dollars, in consideration of the rate of charge for the transportation of the property, the rule is now firmly settled that under the Virginia statute (subsection 24, section 1294-c, Code of 1904), as to intrastate shipments, such attempted limitation of liability is void where the injury or loss is occasioned by the negligence or misconduct of the carrier.

9. APPEAL AND ERROR—*Assignment of Error—Evidence—Petition—Brief.*—An assignment of error that the court below erred, "in admitting, over defendant's objections, certain illegal evidence offered by the plaintiff," will not be considered, where neither in the petition nor in brief for defendant is such evidence pointed out.

Error to a judgment of the Circuit Court of Lee county in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action at law by notice of motion instituted in the court below by the defendant in error against the plaintiff in error to recover $1,500 damages for the loss of fifty-two hogs by death from hog cholera alleged to have resulted from the deprivation of the plaintiff of the use of certain hog-cholera serum as a preventive treatment of the hogs for that disease by reason of the unreasonable delay in the thansportation of such serum.

The parties will be hereinafter referred to in accordance with their positions in the court below.

There was a trial by jury; a verdict and judgment for the plaintiff.

The following are the material facts bearing upon the assignments of error of the defendant:

On October 6, 1917, between 2 and 3 o'clock P. M., the Department of Agriculture of the State of Virginia, through its chief clerk, delivered to the defendant at its receiving office in Richmond, Va., a package containing sufficient hog-cholera serum for treatment of one hundred hogs, to be transported "C. O. D." to the plaintiff, W. P. Allen, at Wheeler, Va., and such chief clerk of the department of agriculture at the time "personally urged upon the receiving clerk" (of the defendant) "the importance of the prompt dispatch of the package on the Norfolk and Western train leaving * * * (Richmond) at 9:35 P. M." of that day. The package was accepted by defendant and an express receipt (the draft of which was prepared by the Department of Agriculture by using a printed form therefor and filling in the words underscored in the copy given below), was given by defendant therefor, which so far as material, was as follows:

*"Please Rush*

"Uniform Express Receipt.

"The company will not pay over $50 in case of loss, or 50 cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared and charges for such greater value paid.

"Adams Express Company.

"Non-negotiable receipt.                    *10/6/1917.*

"Received from *Department of Agriculture,* subject to the classifications and tariffs in effect on the date hereof......

........*1 Box Hog Cholera Serum*....................

.......... Value herein declared by shipper to be *C. O. D. fifty-six and 75/100* dollars.

"Consigned to *W. P. Allen*............................

at *Wheeler, Va.* .....................................

"Which the company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof accepts and signs this receipt.

\*      \*      \*      \*      \*      \*

"NOTE. \* \* \* If the shipper desires. to release the value to $50 for any shipment of 100 pounds or less, or not exceeding fifty cents per pound actual weight for any shipment in excess of 100 pounds, the value may be released by inserting 'not exceeding $50,' or 'not exceeding fifty cents per pound,' in which case the company's liability is limited to an amount not exceeding the value so declared or released."                                    "*3 P. M.*"

There are the following material provisions on the back of the receipt:

"1. The provisions of this receipt shall inure to the benefit of and be binding upon the consignor, the consignee, and all carriers handling this shipment \* \* \*.

"2. In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less, and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less, or for more than fifty cents per pound, actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed that value."

The foregoing was all that is material which transpired

between the shipper of the serum, or any one else, and the defendant at the time of the contract of shipment.

The further material facts shown in evidence in the case are as follows:

That hog-cholera serum is used but for one purpose, namely, for treatment of hogs as a preventive of the disease of hog cholera. That at the time of the shipment aforesaid, such serum could not ordinarily be obtained in Virginia elsewhere than from the Department of Agriculture aforesaid. That the chief clerk of that department did not know "of any other person or firm that handles this serum outside of (his) office." That the plaintiff knew of no other source in Virginia from which it could be obtained. And that according to the laws of the adjoining States of Tennessee and Kentucky it could not be obtained from the Agricultural Department of those States by a citizen of Virginia, and those departments alone handled the serum in those States. That it is recognized to be effective in preventing the cholera in ninety per cent of cases treated. That the plaintiff being apprehensive of cholera among his hogs (which were sixty-nine in number), and "knowing that Richmond was the place to order this serum from," on October 5, 1917, wired an order to Mr. Koiner, the Commissioner of Agriculture, to send to him at Wheeler, Va., his express office, serum for 100 hogs. This order was received at the office of said department the next day, and the shipment was delivered to the defendant for transportation that afternoon, as aforesaid.

Instead of being shipped from Richmond on October 6th by the 9 P. M. train, as urged by the said department, as above stated, the shipment was not started from Richmond by the defendant until October 13th, seven days later; and there is no evidence in the case tending to justify or explain this delay.

The jury found, upon ample evidence to support the ver-

dict, that the fifty-two hogs were lost by death from hog cholera by reason of said delay in the transportation of the serum aforesaid, and that the value of the hogs so lost was $1,000, that being the amount of the verdict of the jury in favor of the plaintiff.

*Coleman & Carter*, for the plaintiff in error.

*J. C. Noel*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The assignments of error by the defendant raise but three questions for our consideration, which we will pass upon in their order as stated below.

[1]  1. Will it be considered that the defendant, at the time of its acceptance of the hog-cholera serum for transportation to the plaintiff, knew of the purpose for which the plaintiff had ordered the serum, namely, for use by him as a preventive treatment of his hogs for the disease of hog cholera, merely from the information given defendant at the time by the shipper, namely: that it was hog-cholera serum; that the words "please rush" appear on the face of the express receipt asked of and given by defendant; and that the shipper, at the time, urged upon the defendant the "importance of the prompt dispatch of the package on the Norfolk and Western train leaving  *  *  *  at 9:35 P. M." of that day?  Or was express notice, in so many words, of the use for which the article shipped was intended necessary to be given the defendant at the time of its acceptance thereof, before the defendant can be considered as having had knowledge at such time of such intended use?

The first portion of the question must be answered in the affirmative and the latter portion in the negative.

[2-4] As shown in evidence, as set forth in the state-
ment preceding this opinion, hog-cholera serum is used but
for one purpose only, and that is the purpose in question.
In the absence in the record of any evidence showing that
the defendant may have had some other understanding of
what was the use to which the serum might be put, it must ·
be assumed that when defendant was informed that it was
hog-cholera serum which it was asked to transport, that
information also conveyed to it the further information that
its intended use was for preventive treatment of hogs for
the disease of hog cholera. That was the ordinary, the
usual, and the only use to which such article could be put.
It is well settled that special information does not have to
be given to a carrier of the ordinary and usual use to which
an article shipped is to be put in order to render the carrier
liable for damages resulting from the loss of such ordinary
and usual use, by reason of unreasonable delay in the trans-
portation of the article. Indeed such rule has never been
questioned since the leading case of *Hadley* v. *Baxendale.*
Actual notice to the carrier of the precise use to which the
article shipped is to be put has never been held by the au-
thorities on the subject as requisite, except when damages
are claimed for loss of some special use to which the article
was intended to be put, different from its usual and ordinary
use. And, even in such cases, information given the carrier
of peculiar features of an article having a special, as well
as an ordinary, use, or that information as given by the
name of the consignee and the appearance of the article it-
self, may often be sufficient to charge the carrier with
knowledge of the special use to which the consignee of the
goods intends to put them. *Story Lumber Co.* v. *So. Ry.
Co.*, 151 N. C. 23, 65 S. E. 460, and cases therein cited; 8
R. C. L., sec. 28, p. 462.

[5] The only source from which we feel that any un-
certainty could have arisen in the mind of the defendant in

the instant case as to the intended use by the consignee of the hog-cholera serum, would have been over some uncertainty as to whether the consignee was a merchant or dealer in serum, rather than the intended user of it. But the evidence in the instant case excludes all probability of such an uncertainty having arisen, for there is nothing in the name of the plaintiff, the consignee, as it appears on the express receipt, or way-bill, in evidence to suggest that he was a merchant or dealer in the serum; and the other evidence in the case, noted in the statement preceding this opinion, negatives the idea that there was any merchant or dealer in the serum in the State other than the shipper, the Department of Agriculture of the State. It was easily in the power of the defendant to have shown that it had transported or expected to be called upon to transport shipments of such serum to others than intended users of it, if such had been the fact. In the absence of such proof, in accordance with the well-known rule on the subject of the inference to be drawn under such circumstances from evidence not in itself conclusive, the conclusion is irresistable that such was not the fact, and that there was no uncertainty on the subject in the mind of the defendant at the time of the contract of carriage and that it knew that it was to transport the serum to the plaintiff for his use and for the ordinary and only use aforesaid to which it was expected to be put.

[6]  2. The purpose for which the serum was intended to be used, being the ordinary (and indeed the only) purpose for which it is used, and that purpose being actually or constructively known to the defendant at the time of the contract of carriage, are the damages which the plaintiff recovered by the verdict and judgment under review, general or special damages?

In such case it is obvious that the damages in question are general and not special damages.

The damages in the case before us arose, not out of any

special circumstances not likely to have been in contempla-
tion of the parties at the time they made the contract, but
they arose "naturally—that is, according to the usual course
cf things—from the breach of the contract itself," and
were such as may reasonably be supposed to have been in
the contemplation of both parties at the time they made the
contract, as the probable result of the breach of it.  *Hadley*
v. *Baxendale, supra* (9 Exch. 341, 23 L. J. Exch. 179, 18
Jur. 358, 5 Eng. Cas. 502).  They fall directly under the'
definition of general damages in the leading case just cited
and quoted.  Such rule is in force in this State as well as
generally elsewhere.  *Kendall Bank Note Co.* v. *Common-
wealth Saving Fund,* 79 Va. 573; 8 R. C. L. sec. 25, p. 455.

[7]  As said in 3 Sutherland on Damages (3rd ed.), sec-
tion 913:  "Damages are given against a carrier with ref-
erence to a particular use for which property is delivered
for transportation when such use is brought to his notice at
the time of contracting.  In a late English case the prin-
ciple is stated, and said to be settled, that whenever either
the object of the sender is specially brought to the notice of
the carrier, or circumstances are known to him from which
the object ought in reason to be inferred, so that it may be
taken to have been within the contemplation of both parties,
damages may be recovered for the natural consequences of
the failure of that object."

As pointed out above, the property delivered for trans-
portation in the case before us had but one use; and that
was also its particular, and ordinary, as well as its only
possible use.  Hence, the statement of the law by the learned
author last quoted is directly applicable to the case before
us.

The case is the same in principle as those involving de-
lay in transportation of traveling theatrical companies or
their properties, in which the authorities are generally in
accord in holding the carrier liable for damages occasioned

the consignee by the loss of the peculiar use to which the theatrical company and their properties would have been put but for the unreasonable delay in their transportation. As held in these cases, in substance, while the use in question is peculiar and the resultant damages for the loss of such use are peculiar, as compared with such cases involving delay in delivery of a different character of shipments, the damages are not for that reason special damages. The damages are different from the ordinary damages in cases of delay in the transportation of ordinary merchandise, but they are, nevertheless, but the ordinary damages from delay in the transportation of such peculiar kind of freight. *Weston* v. *Boston, etc., R. Co.,* 190 Mass. 298, 76 N. E. 1050, 4 L. R. A. (N. S.) 569, 112 Am. St. Rep. 330, 5 Ann. Cas. 825; *Illinois Cent. R. R. Co.* v. *Byrne,* 205 Ill. 9, 68 N. E. 720. See also 1 Sutherland on Damages, sec. 50, and cases of *Hammer* v. *Schoenfelder,* 47 Wis. 455, 2 N. W. 1129, and *Jones* v. *George,* 61 Tex. 345, 48 Am. Rep. 280, cited in such section and in the note thereto at p. 150, for the same principle involved in the determination of what are special and what general damages in cases of breach of contract other than contracts of carriage.

The defendant especially relies on the case of *Chapman* v. *Fargo,* 223 N. Y. 32, 119 N. E. 76, L. R. A. 1918 F, 1049, Ann. Cas. 1918 E, 1054, as sustaining a contrary view of the law. But an examination of that case discloses that it sustains, in principle, the view above expressed. That case involved the shipment of a moving-picture film and the court held that it did not fall within the principle under consideration, because, while the carrier was held to have had notice at the time of the contract of carriage that the films were to be exhibited by some one, yet, in view of the fact that such films are sent out originally by a central company and are shipped from one place of exhibition to another and finally back to the original sender, it was held that

the carrier had no notice that the plaintiff and consignee was to be the exhibitor; or that he owned a theater for which exhibition of the films on an important holiday like Christmas had been specially advertised; or that such films possessed such particular attractiveness for the public that they could not be readily replaced; or that on failure to deliver them on a certain day it would be necessary to close the theater or supply their place with films less attractive and less profitable. And the court refers to the theatrical company or scenery cases above cited with approval, distinguishing the case before it from them on account of the features of the facts to which we have above adverted. In this connection the court, in the *Fargo Case,* has this to say concerning the theatrical company or scenery cases aforesaid: "But the decisions in those cases are entirely in accordance with the general rules which have been stated. As was pointed out in the *Weston Case,* the ordinary result of failure to transport a traveling theatrical company or its properties, would be prevention of a performance and the loss of expected returns from such entertainment would not be special profits or damages, but ordinary damages such as were to be anticipated." And the same is true in the case before us of the loss of the expected benefit from the use of the hog-cholera serum.

A great number of other cases are cited and relied on by the defendant. But all of them are either cases involving the transportation of parts of mill machinery, as to which the rule has been settled, since the *Hadley* and *Baxendale Case,* that loss of profits resulting from the shutting down of the mill cannot be recovered as general damages; or they involve transportation of articles of which the intended use was unusual, being different from their ordinary use; or the damages claimed were unusual, being different from those which would ordinarily arise from the loss of the ordinary use of the article. These cases involve the trans-

portation of articles and claims of special damages for loss
of special uses of them, of the character which may be
briefly alluded to as follows: *Harper Furniture Co.* v. *So.
Express Co.,* 148 N. C. 87, 62 S. E. 145, 30 L. R. A. (N. S.)
483, 128 Am. St. Rep. 588, shaft for mill machinery; *So.
R. R. Co.* v. *Langley,* 184 Ala. 524, 63 So. 545, empty bot-
tles—unusual use and damages; *So. R. R. Co.* v. *Moody,* 169
Ala. 292, 53 So. 1016, stoves—unusual use and damages;
*Pilcher* v. *Central of Georgia Ry. Co.,* 155 Ala. 316, 46 So.
765, material for making boxes—unusual use and damages;
*Murrell* v. *Pacific Ex. Co.,* 54 Ark. 22, 14 S. W. 1098, 26 Am.
St. Rep. 17, fruit trees—loss of special contract of sale;
*Williams* v. *Atlantic Coast Line,* 56 Fla. 735, 48 So. 209,
24 L. R. A. (N. S.) 134, 131 Am. St. Rep. 169, orange boxes
—loss due to ensuing illness of men employed to pick the
oranges; *Produce Reporter Co.* v. *Adams Ex. Co.,* 176 Ill.
App. 74, 77, credit book shipped in part performance of
special contract—loss of the special contract; *Stone* v.
*Adams Ex. Co.* (Ky.), 122 S. W. 200, shaft for machinery
in electric plant; *Franklin* v. *L. & N. R. R.* (Ky.), 116 S.
W. 765, trunk of goods intended to be followed and sold by
plaintiff—loss of time and expenses of latter; *Mather* v.
*Am. Ex. Co.,* 138 Mass. 55, 52 Am. Rep. 258, architect's plan
for house, but contents of package undisclosed in any way
to defendant; *U. S. E. Co.* v. *Root,* 47 Mich. 231, 10 N. W.
351, printed posters advertising time, place, etc., of con-
cert to be given by plaintiff, but contents of package undis-
closed in any way to defendant; *Am. Ex. Co.* v. *Burke,* 104
Miss. 275, 61 So. 312, broken part of printing press ship-
ped as model for duplication of the part—same in principle
as mill machinery shipment; *Dunne* v. *St. Louis, etc.,* 166
Mo. App. 372, 148 S. W. 997, wagons and buggies to be sold
during a certain session of court—no notice to defendant of
special purpose of shipment; *Higgins* v. *U. S. Ex. Co.,* 83
N. J. L. 398, 85 Atl. 450, castings for mill machinery; *Har-*

*ris* v. *Fargo* (Sup.), 113 N. Y. Supp. 577, camping outfit—notice to the defendant that early delivery was "urgent," but none that a camping party would be at the expense of staying at a hotel awaiting arrival of outfit; *Lichenstein* v. *Frgo*, 66Misc. Rep. 149, 121 N. Y. Supp. 327, millinery goods of which acceptance refused by consignee—delay in notice of return—loss due to change of style, of the likelihood of which the defendant had no notice; *Cent. R. R. Co.* v. *Johnson*, 116 Tenn. 624, 94 S. W. 600, piping—unusual use—notice that the piping was "needed very badly," but not for what use—loss that of a special contract of pumping oil; *Pacific Ex. Co.* v. *Darnell*, 62 Tex. 639, a part of mill machinery.

As to details of fact concerning the *quantum* of damages, such as, in the instant case, the number of hogs the plaintiff might lose because of unreasonable delay in the transportation of the serum for their treatment and the value of such hogs, the law never requires notice of such details as a basis for recovery of such damages. The sole requisite as to the general damages recoverable is that they must arise "naturally—that is, according to the usual course of things —from the breach of the contract itself," as aforesaid, for then they are "such as may be reasonably supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it," as aforesaid. *Hadley* v. *Baxendale, supra.* It is not required that the parties should have then actually considered such damages. The law in such case itself draws the conclusion that they were so considered on the ground that it may be fairly supposed they were so considered. 8 R. C. L., sections 25 and 26, pp. 458-9.

[8] 3. Do the provisions in the face and on the back of the express receipt set forth in the statement preceding this opinion limit the liability of the defendant to the sum of fifty dollars?

This question must be answered in the negative.

This is not a case in which there was a declared or released valuation of the article shipped. The amount of "fifty-six and 75/100 dollars," is entered in the express receipt as the "C. O. D." charges which the carrier was to collect; and there is no "inserting" of the words "not exceeding $50," as the value by which the rate of charge for transportation was to be fixed, and "in which case the company's liability is limited to an amount not exceeding the value so declared or released," as stipulated in the "note" on the face of the receipt. In view of such express provisions, those on the back of the receipt set forth in the statement preceding this opinion are ambiguous, and it is not clear therefrom or from the other provisions on the subject on the face of the receipt that there was in fact any actual reduction of rate of charge in view of an actually agreed valuation of the article shipped— *i. e.,* it is not entirely clear that this particular contract attempted to limit the liability of the carrier.

But if it were conceded that the contract of carriage attempted to limit the liability of the defendant to the sum of fifty dollars. in consideration of the rate of charge for the transportation of the property notwithstanding some difference of opinion on the question when it arose under another statute (see *Richmond & Danville R. R. Co.* v. *Payne,* 86 Va. 481, 10 S. E. 749, 6 L. R. A. 849, and *C. & O. Ry. Co.* v. *Beasley,* 104 Va. 788, 52 S. E. 566, 3 L. R. A. [N. S.] 183), the rule in this State is now firmly settled that under our statute (sub-section 24 of section 1294-c, 1 Pollard's Code, 1904—which was enacted subsequently to the decisions last cited and is in addition to and different in its phraseology from the statute in this State on the subject previously existing, sec. 1296, Code 1887; sub-sec. 25 of sec. 1294–c, 1 Pollard's Code 1904), as to intrastate shipments, such attempted limitation of liability is void where

the injury or loss is occasioned by the negligence or mis-
conduct of the carrier. *C. & O. R. Co.* v. *Pew*, 109 Va. 288,.
64 S. E. 35; *So. Ex. Co.* v. *Keeler*, 109 Va. 459, 64 S. E. 38.
We cannot be governed, therefore, by a contrary rule in
other jurisdictions, which is unaffected by such a statute
as we have in Virginia, and hence a discussion of authori-
ties from such jurisdictions relied on by defendant would
be fruitless and will not be here entered upon.

[9]    4. What is said above disposes of all of the assign-
ments of error save one, which, as stated in the petition, is
that the court below erred "in admitting over defendant's
objection certain illegal evidence offered by the plaintiff."
Neither in the petition nor in brief for defendant is such
evidence pointed out.   Therefore, under our rule on the sub-
ject, such assignment of error will not be considered.

On the whole, therefore, we find no error in the judgment
complained of, and it will be affirmed.

*Affirmed.*