[ALBANY GENERAL TERM, May 5, 1856. *Harris, Watson* and *Gould,* Justices.]

## WHITE *vs.* VAN KIRK and ASHTON.

In respect to the quantity and condition of the goods shipped, a bill of lading is but a receipt, and only prima facie evidence. But in respect to the agreement to carry and deliver the goods, it is a contract, to be construed like all other written contracts, according to the legal import of its terms.

And if there is nothing on the face of the instrument which requires the master of the vessel to take a particular route, rather than another, the owner of the goods, in an action against the owner and master of the vessel, to recover damages caused by an alleged deviation, cannot resort to proof of a preliminary conversation, between his agent and the master, to establish sech an obligation.

If a shipper of goods intends to make it a part of the contract that the vessel shall take a particular route, rather than another, he should have a provision to that effect embraced in the bill of lading.

APPEAL from a judgment entered on the report of a referee. The action was brought against the defendant Van Kirk as master, and the defendant Ashton as owner, of the schooner

Benjamin Browning, for damage to a quantity of malt shipped by the plaintiff from Albany to Baltimore. The bill of lading signed by Van Kirk, the master, was as follows:

" Shipped in good order and well conditioned, by John G. White, on board the good schooner called the Benjamin Browning of Camden, N. J., whereof A. Van Kirk is master for this present voyage, now in the harbor of Albany, and bound for Baltimore, one thousand bushels barley malt, to be delivered, in like good order, at the port of Baltimore aforesaid, the dangers of the seas alone excepted, unto Henry White or to his assigns, he or they paying freight for the said malt, six cents per bushel, with accustomed primage and average. Dated Albany, April 14, 1854."

It appeared upon the trial, that between Albany and Baltimore there are two routes, one inside, by the canals, the other outside, by the ocean, and that one route is as commonly used as the other. The plaintiff proved that at the time the malt was shipped, his agent inquired of the master his name and the name of his schooner, stating to him that he wished to write to the plaintiff, so that he might effect an insurance; that the master gave his name and the name of his schooner, and at the same time stated that the schooner was an inside vessel; that her route was through the canals, and that he had never been outside with her; that the agent accordingly wrote to the plaintiff that the malt would be shipped on an inside vessel, and her route would be through the canals. The plaintiff further proved, that he had caused the malt to be insured on board the Benjamin Browning at and from Albany to Baltimore, *via canal;* that the schooner took the outside or ocean route, and having met with a storm, the malt became wet and injured, without default or negligence of the master or crew. The plaintiff, by reason of the deviation of the vessel, lost his insurance.

The counsel for the defendants objected to any parol evidence of an agreement between the plaintiff's agent and the master of the vessel, and insisted that the parties were concluded by the bill of lading. The referee overruled the objection and found, as matter of fact, that the defendants agreed

with the plaintiff that the vessel should take the inside or canal route, and that, upon the faith of such agreement, the plaintiff caused the malt to be insured for that route, and the schooner having taken the outside route, the plaintiff lost his claim for insurance, and thus sustained damage to the amount of $533.78, for which sum he reported in favor of the, plaintiff. Upon this report judgment was entered for $697.45 damages and costs. The defendants appealed from the judgment.

*W. Barnes,* for the plaintiff.

*W. A. Beach,* for the defendants.

*By the Court,* HARRIS, J.   Assuming that the evidence was sufficient to justify the referee in finding that the master of the vessel in fact agreed that it should take the inside route, which is, at least, questionable, I think the evidence itself was inadmissible.   It has often, and truly been said, that a bill of lading has a twofold character.   As a receipt it acknowledges the delivery of goods to the party who executed it.   The admission is only *prima facie* evidence of the fact.   It may be shown by parol evidence that the quantity, quality or condition of the goods received, is erroneously stated.   But besides acknowledging the *receipt* of the goods, it contains a contract to carry and deliver them.   In this respect, it is like other instruments in writing. Parol evidence cannot be resorted to for the purpose of changing its effect, or adding any thing to its obligation.   The parties are supposed to have written out all that they deemed necessary to give full expression to their intention. (1 *Greenleaf's Ev.* §§ 282, 305.)

In *Creery* v. *Holly,* (14 *Wend.* 26,) the bill of lading acknowledged the receipt of 90 barrels of wrought iron, shipped in good order and to be delivered in like good order to the defendant.   The defendant was allowed to prove by parol evidence, that it had been agreed between the plaintiff and the master of the vessel that the goods should be shipped *on deck.*   The judgment was reversed, on the ground that the evidence of a

White *v.* Van Kirk.

parol agreement in relation to the mode of carrying the goods was improperly received. In *Niles* v. *Culver,* (8 *Barb.* 205,) the defendants had given a receipt for a quantity of apples at Utica, which they agreed to forward to New York, at a specified price. The plaintiff's counsel had offered to prove, on the trial, certain stipulations made by the defendants, as to the mode of carrying the apples. The evidence was excluded. Upon a motion for a new trial, it was held that the receipt was in the nature of a contract, and that parol evidence could not be received to add to, or vary its terms. " All previous agreements and stipulations," says Parker, J., " were merged in the contract." (*See also Renard* v. *Sampson,* 2 *Kern.* 561.) In that case, a memorandum had been made in writing stating the terms upon which it had been agreed that a vessel should be chartered. A charter party was subsquently executed in pursuance of the agreement, but it did not contain all the stipulations embraced in the memorandum. It was held, that the charter party was a substitute for the stipulations contained in the previous communications between the parties. " That instrument," says Denio, J., " was intended to, and in its nature did, cover the whole subject of those communications, and, as soon as it was executed it superseded all that had gone before."

The familiar rule of evidence which these cases recognize and affirm, is clearly applicable to the case in hand. In respect to the quantity and condition of the malt shipped, the bill of lading was but a receipt, and only prima facie evidence. But in respect to the agreement to carry and deliver the malt, it was a contract, to be construed like all other written contracts, according to the legal import of its terms. And as it is not claimed that there is any thing on the face of the instrument which required the master of the vessel to take the inside route, rather than that by ocean, the plaintiff cannot resort to proof of a preliminary conversation, to establish such an obligation. If he had intended to make it a part of the contract that the vessel should take one route rather than another, he should have had this provision embraced in the bill of lading. Had this been done, there would have been no occasion for liti-

gation between the parties. But as the bill of lading contained no restriction as to the route he was to take, the master undoubtedly felt himself at liberty to take either, at his option. He had, in fact, made no agreement to the contrary. He had told the plaintiff's agent that his schooner was an inside vessel; that her route was through the canals; and that he had never been outside with her. All this may have been true, yet it did not bind him not to go *outside.* It was not made a condition of freighting the vessel that it should take one route rather than the other. The master was not even informed that the plaintiff had any preference on the subject. The claim now made that the master, because he had said that his vessel was an inside vessel, and that he had never been outside with her, bound himself to carry the malt by the inside route, is an illustration of the wisdom of the rule that merges in the written evidence of the contract all preceding negotiations and agreements. The very object of reducing a contract to writing is, that the written instrument, taking the place of all other testimony, shall become the sole witness to declare what has, in fact, been agreed upon between the parties. In the language of a learned writer, " the parties constitute the writing to be the only outward and visible expression of their meaning, and no other words are to be added to it, or substituted in its stead." (1 *Greenl. Ev.* § 277.)

I am of opinion that the evidence to show an agreement of the master to carry the malt by the inland route, was erroneously admitted by the referee. The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

[Albany General Term, May 5, 1856. *Harris, Watson* and *Gould,* Justices.]