(7 App. Div. 494)

## PRATT v. ANO.

(Supreme Court, Appellate Division, Fourth Department.   June 17, 1896.)

ESTOPPEL IN PAIS—QUESTION FOR JURY.

Plaintiff purchased from the owner of land all the spruce timber growing thereon. Afterwards defendant made a contract with the owner of the land to peel and remove all hemlock bark, and to cut and remove the hemlock timber from which the bark was peeled. Plaintiff's foreman testified that, soon after the contract had been made with defendant, he saw a man cutting a spruce tree on the land; that he spoke to defendant about it, and defendant said that he would "attend to it right away"; and that he immediately afterwards informed plaintiff of what defendant had said. Plaintiff testified that he had relied on that statement. *Held*, that the court properly submitted to the jury the question whether the conversation between the witness and defendant estopped defendant from asserting that he was not liable to plaintiff for injury to spruce trees occasioned by the men engaged in peeling hemlock bark and cutting hemlock timber.

Appeal from circuit court, Utica county.

Action by Charles W. Pratt against Joseph Ano, to recover damages for injury alleged to have been done to plaintiff's spruce timber. From a judgment entered on a decision dismissing the complaint on the merits after a verdict in favor of defendant, and from an order denying a motion for a new trial made on the minutes of the court, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Walter Ballou, for appellant.
Jones & Townsend, for respondent.

WARD, J. This action was brought to recover damages occasioned by the negligence of the defendant to the spruce trees and timber of the plaintiff in cutting hemlock timber, peeling bark on, and removing the same from, lots 3, 5, 9, and the east half of lot 10, Woodhul tract, in the towns of Wilmurt, Herkimer county, and Forrestport, Oneida county, in this state, in the years 1892 and 1893. The premises upon which the timber in controversy was located consisted of about 2,200 acres of woodland, and on the 27th of February, 1889, one Dr. Joseph Leavitt, who resided at Pittsfield, Mass., was the owner thereof in fee, and continued to be such owner, except as he parted with certain interests in the timber to the defendant,

down to the time of the commencement of this action. On the last-mentioned date,. the said Leavitt and the plaintiff herein entered into a contract, in writing, whereby Leavitt sold to the plaintiff all the "spruce timber from what will make a 30-foot dock stick and upward," on the said premises. The contract further provided that the plaintiff should have 10 years from April 1, 1889, to cut and remove the said spruce. In 1891 the defendant, with knowledge of the plaintiff's contract aforesaid, entered into a contract with Leavitt for the peeling of the hemlock bark, drawing it, and cutting the roads for that purpose, on the whole of lots 5 and 10 aforesaid. He was to load the bark on the cars at a railroad station about eight or nine miles from the lot. The defendant's contract also embraced the right to. cut and remove the hemlock timber from which the bark was peeled. At the time the defendant made the contract with Leavitt there does not appear to have been much, if any, of the spruce timber removed from the premises. The evidence upon the trial tended to show that, in peeling the hemlock bark, cutting the roads, and felling and removing the hemlock timber, damage to some extent. was done to the plaintiff's spruce timber; but from the evidence it seems difficult to determine whether such damage extended further than was incidental and necessary in the removal of the timber, the peeling of the bark. and cutting the roads. There was some dispute upon the trial as to what was meant by a 30-foot dock stick. It was claimed by the defendant that a spruce stick was not a dock stick unless it was 30 feet long and 6 inches in diameter at the small end, while it was claimed by the plaintiff that it might be from 4 to $4\frac{1}{2}$ inches at the top, running up larger.

Oliver Hevener was sworn for the plaintiff. He testified that he was in the employ of the plaintiff as foreman, and a part of his business was to look after the plaintiff's timber lands, and to see that no theft or damage was committed on the timber; and he continues:

"In the year 1891, I discovered a man by the name of Rocker cutting a spruce tree on lot 5, Woodhul tract [the tract in question]. After that I saw Mr. Ano, and had a conversation with him on the subject. I told him I went there to look where they had been peeling, and I found some timber down, and found them cutting down some timber. I said to him that Mr. Pratt told me to look after it, and I notified him, and he told me he would attend to it right away. I told him these men had cut spruce. * * * This was somewhere the last of May or first of June, 1891. That was about the time they began cutting hemlock there. I think the hemlock on lots 5 and 10 [the lots upon which the hemlock timber was located, and was peeled and cut by the defendant] was cut and got out in 1892 and 1893, and some in 1891."

This witness further stated that he, immediately after this conversation with the defendant, stated to the plaintiff what the defendant had said, and the plaintiff testified that he relied upon that statement.

The learned trial judge, in charging the jury, after stating the nature and purposes of the action, and that the plaintiff became the owner, under his contract with Leavitt, "of all spruce timber that will make a 30-foot dock stick and upward," proceeds:

"Notwithstanding this contract, Leavitt had the right to sell and dispose of any other timber that was not included within the terms of this contract.

It appears that upon the premises in question there was some hard-wood timber, that some of the witnesses have designated 'hub stuff,' and some hemlock. These Leavitt had a right to sell, and to give permission to remove the same. It follows that Leavitt and any persons that he might designate had the right to remove the hemlock timber, and if, in its reasonable removal, certain spruce timber was injured, the plaintiff had no cause of action therefor. It is evident that, in removing the hemlock, it would be necessary to make roads; and, if that rendered it necessary to cut certain spruce, the plaintiff would have no cause of action on that account; and if, in cutting the hemlock, it necessarily fell upon spruce, and injured it, the plaintiff could not recover for that. Under this contract, the plaintiff did not, by its terms, own such timber. So much as was injured by the operation made necessary in the removal of the hemlock timber, under the terms of this contract, did not belong to the plaintiff, and he cannot recover for it. Some time after the plaintiff and Leavitt had entered into this contract, the defendant and Leavitt entered into another contract, by which Ano agreed, for a certain price, to remove from these lots 5 and 10 all the hemlock bark and sawing timber. Leavitt had the right to make that contract. Under that contract the defendant did not do anything—himself, I mean—in the way of removing this hemlock timber; but it appears he sublet that work to other parties. [This statement seems borne out by the evidence.] To one party he let the work of felling the trees, and peeling the bark, and putting it upon the roadways that had been cut for that purpose, and to cut the roads. To another party, it is said, he let the job of skidding the hemlock logs, and drawing them to the mill. If that was all the case, I would charge that the plaintiff could not recover in this action for the reasons that the contract between Leavitt and Ano was a valid contract; * * * that Ano had a right to perform, and not encroach upon the rights of the plaintiff. The rule is that, if the parties to whom such contract work is sublet do anything that is contrary to law, the contractor so doing the wrongful act is liable to the party injured, and not to the original contractor."

There was no exception to this charge or any portion of the same. It therefore became the law of the case for the jury, acquiesced in by the parties, and, whether erroneous or not, cannot be reviewed here.

The learned judge submitted but a single question to the jury, which is the chief matter we are to review upon this appeal, and that was the question of estoppel,—whether the conversation above quoted from the testimony of the witness Hevener, upon which the plaintiff relied, and which does not seem to have been contradicted by any evidence in the case, estopped the defendant from asserting that he was not liable for the injury that might have occurred to the plaintiff's spruce trees by reason of the cutting and removing of the hemlock trees. The counsel for the plaintiff excepted to the court's submitting this question to the jury, and insisted, as the evidence was uncontradicted, the court should have held and charged that there was such an estoppel, which the court refused to do, and plaintiff's counsel excepted. In reverting to the facts which go to make up the assumed estoppel, assuming that the plaintiff's proof was conclusive, as far as it went upon that subject, it will be seen that a very slender foundation is laid upon which to base an estoppel. In the pioneer case on this subject of equitable estoppel, or estoppel in pais, Pickard v. Sears, 6 Adol. & E. 469, Lord Denman, C. J., on appeal, lays down the following rule as to what constitutes such estoppel:

"The rule of law is clear that where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces

him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."

Later adjudications have supplemented this with the proposition that it is not necessary that the party sought to be estopped should have intended by his acts to deceive the other party, and it is sufficient that his acts and statements were calculated to mislead, and did mislead, the other party, and are inconsistent with the evidence he proposes to give or the claim he proposes to set up. Bank v. Hazard, 30 N. Y. 226; Brown v. Bowen, Id. 520, 541.

The most that can be made out of the assumed estoppel is that the plaintiff's agent informed the defendant, at the time the said contractors under the defendant began to cut the hemlock and peel the bark, that they were injuring the plaintiff's timber, and the defendant said he would attend to it right away. Here is not a statement by the defendant of any existing fact, upon which the plaintiff was to rely in shaping his conduct with reference to the timber in the future, but it was simply a promise of the defendant either to look into the matter and inform the plaintiff, or to stop further injuries. Just what inference is to be drawn from that statement, what the defendant intended thereby, and how the plaintiff understood it, and how far it influenced his conduct, were questions for the jury; and, if the defendant was entitled to the submission of the question of estoppel at all to the jury upon this evidence, the charge was as favorable to the defendant as he could expect. The court charged that, if the jury found that the defendant was estopped, and that the defendant or his employés or subcontractors had injured any of the 30-foot dock sticks upon the premises that came within the plaintiff's contract, then for such injury the plaintiff could recover; otherwise not. But the court did submit the question to the jury whether the facts of the assumed estoppel as stated by the witness Hevener had occurred, and this submission is seriously pressed upon us by the appellant as error, because there was no evidence disputing this given upon the trial, and therefore the court should have assumed the facts as existing as stated by this witness Hevener, and have assumed that the plaintiff relied upon that statement, and thus neglected to look after his own timber, and protect himself, relying upon defendant's promise to do so. This evidence was given by the plaintiff's foreman, whose business it was to look after this timber and protect it from injury; and, having failed to do so, he was in a sense interested in giving a good reason why he had not done so. The plaintiff, of course, was an interested witness; and therefore the court was probably right in submitting the question as to whether the conversation occurred to the jury, as the only proof of the fact came from interested witnesses.

But the trouble with the plaintiff's case upon this question lies back of all this, in the fact that no estoppel was shown. Assuming that the plaintiff's witnesses upon the subject stated truly what had occurred, an estoppel in pais cannot be founded upon an agreement to do something in the future. White v. Ashton, 51 N. Y. 280 (opinion, 285), affirming 25 Barb. 16. If there is a breach of such an agree-

ment, the party injured, if he has any remedy, may recover damages for such breach; but this is not done upon the theory of an estoppel. The estoppel must be based upon the situation as it exists when the facts occurred out of which it was created; and equity goes back to that time to ascertain whether, in good faith and in justice, the party sought to be estopped can afterwards establish a different state of facts from that which the party asserting the estoppel had reason to believe, from the acts and conduct of the other party, existed at the time, and upon which he relied.

The appellant also claims that the learned trial judge erred in charging the jury that, upon the question of estoppel and the intent of the parties, the jury might take into consideration the contents of certain letters which had been read to the jury without objection. Some of these letters had reference to matters that might bear upon the question of estoppel; but, if any inferences were to be drawn from those letters on that subject, they were favorable to the plaintiff, and concerning which no exception on his part will lie.

It follows that the judgment and order appealed from should be affirmed, with costs. All concur.