## Staunton.

## C. HENRY PEERY v. NORFOLK AND WESTERN RAILWAY COMPANY.

### September 18, 1924.

1. CARRIERS—*Carriers of Live Stock—Classification of Horse as Ordinary "Live Stock"—Damages for Injury to a Race Horse—Case at Bar.*—The instant case was a suit to recover $3,000.00 damages for negligent injury to a race horse, in the course of an interstate shipment. The action was based on a contract of carriage, wherein the horse was being transported under the "uniform live stock contract," prescribed by the Interstate Commerce Commission. That contract provides for the classification of shipments as "ordinary live stock" and "other than ordinary live stock." By the terms of that contract the shipper is required to select and designate the proper classification. Ordinary live stock takes the lowest rate. In the instant case the shipper's agent selected and designated the classification of "ordinary live stock," and described the horse as an exhibition horse, but placed no valuation upon it. The carrier's schedule did not refer expressly to the order of the Commission authorizing the same.

   *Held:* That the shipper could not repudiate his classification and recover full actual damages for the injury to the horse as a race horse or exhibition horse.

2. CARRIERS—*Interstate Commerce—Effect of Second Cummins Amendment.*—In the instant case, an action by a shipper to recover the full value of an injury to a race horse which had been described in a contract of carriage as "ordinary live stock," the plaintiff contended that as the carrier's schedule did not refer expressly to the order of the Commission authorizing the same, the carrier's liability was not limited, but this view overlooks the fact that the conditions precedent to effective tariff limitation of liability, as prescribed in the second Cummins amendment (U. S. Comp. Statute, sections 8604-a, 8604-aa) have no bearing upon the validity of the tariffs, in respect to any other rights or duties of the parties, further than as they limit liability upon other than ordinary live stock. In all other respects the tariff was valid and binding upon the parties.

3. PAROL EVIDENCE—*Carriers—Contract of Carriage.*—Parol evidence is inadmissible to explain, vary, or control a written contract of carriage.

4. CARRIERS—*Classification—Estoppel.*—Having accepted the benefit of the lower rate dependent upon the specified valuation, the shipper is estopped from asserting a higher value. The rate of freight is indissolubly bound up with the valuation.

Error to a judgment of the Circuit Court of Tazewell county, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Wm. H. Werth,* for the plaintiff in error.

*F. M. Rivinus, Waller R. Staples,* and *T. C. Bowen,* for the defendant in error.

WEST, J., delivered the opinion of the court.

The plaintiff sued defendant for the recovery of $3,000.00 damages for negligent injury to a race horse, in the course of an interstate shipment from Graham, Virginia, through Bluefield, West Virginia, to Galax, Virginia. The action was based on the contract of carriage, wherein the horse and four others were being transported under the same contract, known as the "uniform live stock contract," prescribed by the Interstate Commerce Commission. The law required the company to use this form of contract for shipment of live stock, instead of the "uniform bill of lading."

The contract provides for the classification of the shipments as "ordinary live stock" and "other than ordinary live stock;" that on shipments of *ordinary live*

*stock* no declaration of value shall be made by shipper, nor any value be entered in the bill of lading; that on shipments of live stock "chiefly valuable for breeding, racing, show purposes, etc., "the valuation shall be placed thereon by the shipper; and upon refusal of shipper of "other than ordinary live stock" to declare the value of the stock for entry in the bill of lading, the shipment will not be accepted for transportation under the contract. By the terms of the contract the shipper is required to select and designate the proper classification by his signature specifically subscribed for that purpose, in addition to his signature to the entire contract. The shipper is also required to give a description of the animal being shipped.

Under the contract, *ordinary live stock* takes the lowest rate, while the rates on *other than ordinary live stock* are dependent on the valuation as stated by the shipper, ranging from the basic value stated in the classification, at which the lowest rate applies, to the actual value in which event the rate will be higher by the amount prescribed in the tariffs or classifications.

The plaintiff's agent, Aura Booth, selected and designated the classification of "ordinary live stock," and, under the words "number and description of animals," described the horses in the contract as "five exhibition horses," but omitted to declare the value of the live stock. Booth signed his name specifically under the classification and at the end of the entire contract and paid the tariff rate which was proper for freight on ordinary live stock.

There was evidence for the plaintiff tending to prove that the value of the horse *as a race horse* was totally destroyed by the injuries inflicted upon him, as a result of defendant's negligence, and that his maximum value *as such* was from $2,000.00 to $3,000.00.

The court limited the jury to the value of the horse as "ordinary live stock." The jury returned a verdict for the plaintiff for $150.00, upon which the judgment under review was entered. The plaintiff is here complaining of that judgment.

[1] The plaintiff makes several assignments of error, but the only question to be decided is this: Having classified his horse as "ordinary live stock," has the plaintiff the right to repudiate his classification and recover the full actual damages for the injury to the horse as a race horse or exhibition horse?

In June, 1906, section 20 of the commerce act was amended by the "Carmack amendment" (U. S. Comp. St. § §8604-a, 8604-aa), which, as construed by the Supreme Court, established the supremacy of Federal law over the subject matter of the liability of carriers for loss of or injury to interstate shipments; created and put upon initial carriers liability where, before this statute, the carrier guilty of the negligence alone would have been liable; prohibited any express or implied exemption of initial carriers from the liability thereby imposed; and, in effect, declared that the common law liabilities and defenses of carriers, except initial carriers as such, were unaffected by the statute. *Atl. C. L. R.* v. *Riverside Cotton Mills,* 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; *Adams Exp. Co.* v. *Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.

Prior to the first Cummins amendment, there was no distinction of classification between *ordinary live stock* and *other than ordinary live stock.* The established tariffs provided for rates graded to value and for corresponding liability on the carrier for loss or damages. In the *Croninger Case, supra,* (1913) the court held such tariff valid. In 1915 the first Cummins

amendment (U. S. Comp. St. § §8604-a, 8604-aa) was enacted, which prohibited gradation of liability to rate proportionate to value, *except* as to goods hidden from view, and where the carrier was not notified as to the character of the goods; but where such goods were hidden, or when the carrier was not notified as to their character, liability graded at rate proportionate to value was expressly authorized.

After the passage of this amendment, but before it became effective, the Interstate Commerce Commission held a hearing to determine its effect and to issue guiding instructions to the carriers and to the public. Their report was published in May, 1915, entitled *The Cummins Amendment*, 33 I. C. C. R. 682. In this report, at page 694, the commission says: "The word 'character' as here used clearly relates primarily to value, or to those qualities affecting value, and when the entire proviso is considered the meaning seems to be that if the qualities affecting value of the goods are hidden from the carrier's view, or are not known to the carrier, the provision applies."

It cannot be denied that the "qualities of a horse affecting value" are not apparent, but are hidden from casual observation. The same report, at page 695, further says: "In those instances in which the carrier desires to limit its liability to the value of the property as specifically stated in writing by the shipper, the rate must be based upon the declared value and be so published; but the Commission apparently must determine in advance of such publication that the commodity is one the value of which can not be known to the carrier from ordinary sources or reasonable inspection, and to which rates based on declared value may be applied in connection with which the carrier's liability is limited to the value so declared." And at

page 696 and page 697 of the report the Commission says:

(Page 696.) "The liability provided by the rates so established by the Commission is applicable no less to instances of loss or damage chargeable to the negligence of the carrier than to those occasioned by causes beyond the carrier's control * * If, in any instance, the shipper declares the value to be less than the true value in order to get a lower rate than that to which he would otherwise be entitled, he violates, and is subject to the penalty prescribed in, section 10 of the act. The carrier would also be subject to the same penalty in such a case if, having knowledge that the value represented is not the true value, it nevertheless accepts the shipper's representation as to value for the purpose of applying the rates."

(Page 697.) "The necessity for revision of the bills of lading, live stock contracts, and other similar contracts of carriage, as well as of certain parts of the carrier's classifications and rate schedules, is manifest."

After the first Cummins amendment became effective and before the second Cummins amendment was enacted, pursuant to the authority of the Commission to determine What commodities there were whose "character or qualities affected value," various associations, representing nearly 100,000 breeders of pedigreed live stock, appeared before the Commission seeking uniformity throughout the United States in the classifications, rules and regulations relating to the transportation of live stock in less than car loads. Some 2,728 rail carriers were made parties defendant. *National Society Record Associations* v. *Aberdeen & Rockfish R. Co.*, 40 I. C. C. R. 347. In this proceeding the Commission prescribed certain *minima* of weights and basic values for specified animals, and also

a gradation of rates for increases in declared value. These weights, basic values and rates of increase were practically the same as those later included in the tariff of the Norfolk and Western filed with the Commission.   40 I. C. C. R., pp. 349-352.

There was still no distinct classification as between *ordinary* and *other than ordinary live stock*.   But, soon thereafter, in 1916, the second Cummins amendment (U. S. Comp. St. § §8604-a, 8604-aa) was enacted and became effective, creating two distinct classifications: "Ordinary live stock" and "other than ordinary live stock," defining the latter as "chiefly valuable for breeding, racing, show purposes and other specific uses."   This statute prohibited gradation of liability to rate proportionate to value, for the first class, *"ordinary live stock,"* but permitted such gradation as to "other than ordinary live stock," upon condition that the Commission should expressly authorize such gradation, and that the tariff schedules covering same should refer to the order of the Commission authorizing the same.   Necessarily this statute rendered inoperative, *as a limitation upon liability,* all provisions of the gradation tariffs which had been filed by authority of the Commission as given in *National Society of Record Associations* v. *A. & R. Railroad Co., supra,* and made further action by the Commission necessary, which action was taken in 1917 in the *Live Stock Classification Case,* 47 I. C. C. R. 335, wherein it slightly altered some of the minimum weights, but adhered to the basic values and increase of rates.   Under the requirements of the statute the Commission limited the application of these gradations *to other than ordinary live stock,* and provided that the rates applicable to

*basic* values for *other than ordinary live stock* should apply to *ordinary live stock.*    47 I. C. C. R., *supra.*

The minima of weights, basic values and increase rates are identical with defendant's tariff later filed with the Commission.    47 I. C. C. R. pages 336 to 337.

The statute, second Cummins amendment, did not in any way affect the validity of the tariffs in any respect, other than as limiting liability, but left them otherwise in full force, requiring that value be declared and prescribing that the rates to be paid should be in proportion to value.

It follows from what has been above set forth that from 1917 down to date, the defendant, Norfolk and Western Railway Company, a party specifically named in these reports of the Commission, had direct authority from the Commission to promulgate and apply the very rates and gradation of rates as provided in its tariff filed with the Commission on April 21, 1920, and effective until after plaintiff's shipment was made.

Besides, on October 21, 1921, the Commission *prescribed* and promulgated the identical form of contract which covered the shipment in controversy.    64 I. C. C. R. 357, Appendix F; and on April 2, 1921, entered the order, No. 270, granting all carriers, in the three classification territories including defendant, the right to continue in force the same schedule previously authorized in 1917.    47 I. C. C. R. 335.

[2] It is contended that the defendant's schedule did not refer expressly to the order of the Commission authorizing the same.

Counsel for the plaintiff overlooks the fact that the conditions precedent to effective tariff limitation of liability, as prescribed in the statute, second Cummins amendment, have no bearing upon the validity of the tariffs, in respect to any other rights or duties of the

parties, further than as they limit liability upon other than ordinary live stock. In all other respects the tariff was valid and binding upon the parties. It made it the duty of the shipper to select the classification of his shipment as between ordinary and other than ordinary. If he selected the latter classification it required him to disclose the true value of his live stock. If he failed to declare such value, it made it the duty of the carrier to decline to receive the shipment. If he did declare, it imposed upon the shipper the duty to pay, and upon the carrier the duty to collect, the higher rate proportioned to the value so declared. The only effect upon failure to conform to the provisions of the statute as to the contents and filing of the tariff schedules was to deprive the carrier of the protecting limitation upon liability.

The first Cummins amendment provided, *inter alia*, that: "Any common carrier * * shall be liable * * for any loss, damage or injury * * and no contract * * or other limitation * * shall exempt the carrier * * from liability * * but the carrier shall be liable * * for full actual loss * * notwithstanding any limitation of liability or limitation of the amount * * or agreement as to the value, etc." * * (U. S. Comp. St. 8604-a.)

The Commission had declared (33 I. C. C. R. 696) that this provision of the first Cummins amendment did not affect the validity of the tariff, or any rights or duties thereunder, save and except as to limitations to value; and the second Cummins amendment provides, in effect, that the provisions of the first Cummins amendment shall not apply to property, except *ordinary live stock*, concerning which the subsequent provisions were complied with. The result was that the

first Cummins amendment was left in full force as to *ordinary live stock* under all conditions, and as to *other than ordinary live stock* concerning which the said provisions were not complied with, the tariff schedules were in full force and effect, except there was no limitation of liability.

Since the question here involved is the measure of full liability for loss or damage to *ordinary live stock,* the question of the validity of the tariff as to the limitation of liability as to *other than ordinary live stock* is of little concern in this case.

[3] The shipper made clear his selection and classification by signing the certificate stating that the shipment was *ordinary live stock;* by failing to state a value for each of the horses; by the rate paid; and by failing to include in the description a statement of value, which is required where shipment is *other than ordinary.*

Parol evidence is inadmissible to explain, vary or control the written contract.

Mr. Justice Lurton, speaking for the court in *Kansas City So. R. Co.* v. *Carl,* 227 U. S. 652, 33 Sup. Ct. 391, 57 L. Ed. 683, says: "The valuation declared or agreed upon as evidenced ·by the contract of shipment upon which the published tariff rate is applied must be conclusive in an action to recover for loss or damage a greater sum   *   *." Mr. Justice Sutherland further says the shipper's knowledge of the contents of the· contract will be presumed.

In *St. Louis, etc., Ry. Co.* v. *Weakly,* 50 Ark. 397, 8 S. W. 134, 7 Am. St. Rep. 104, 110, it was held: "Shipper is bound by contract limiting carrier's liability, though he did not read it before signing it, provided the carrier resorted to no unfair means, and practiced no fraud or imposition, in procuring the signature, and the shipper had the opportunity to know its contents·

\* \*.  Knowing this he cannot be willfully blind and plead ignorance, when it was his duty to know."

In his note to *Chandler* v. *Sprague*, 38 Am. Dec., at p. 409, Judge Freeman says:  "Prior and contemporaneous parol stipulations are deemed merged in the writing, and parol evidence is inadmissible to explain, vary, control, or contradict it.   Lawson on Carriers, sec. 112; Hutchinson on Carriers, sec. 126; *White* v. *Van Kirk*, 25 Barb. 16; *Fitzhugh* v. *Wiman*, 9 N. Y. 559; *Long* v. *New York, etc., R. R. Co.*, 50 Id. 76."

The plaintiff admits he failed, in violation of the statute, to give a clear and proper classification of his shipment, and relies upon this to change the effect of the contract from a lawful shipment as "ordinary" to an unlawful shipment as "other than ordinary," without a declared valuation thereof.   There is no evidence that the plaintiff's horse was intended for exhibition, or that he had ever exhibited any race horse.   The record fails to disclose the real reason why the horses were described as "exhibition horses," unless it was an effort whereby it was hoped to get the lower rate on classification and the higher protection on description, without paying the proper rate therefor.

This court in *N. Y. P. & N. Co.* v. *Bundick*, 138 Va. 535, 122 S. E. 261, quoted with approval, *In re Cummins Amendment*, 33 I. C. C. R. 682, as follows: "It is therefore believed that the liability of the carrier may be limited to the full value of the property so *classified* and established as of the time and place of shipment."

In *Great Northern R. Co.* v. *O'Connor*, 232 U. S. at page 515, 34 Sup. Ct. at page 383 (58 L. Ed. 703), the court held that where the shipper has had the privilege of selection, the carrier is liable only "for the loss of what the shipper had declared them to be, in *class* and *value*."

[4] In the *Lindenburg Case* (1923), 260 U. S., *supra,* at p. 592 (43 Sup. Ct. 206, 67 L. Ed. 414), the court says: "Having accepted the benefit of the lower rate, dependent upon the specified valuation, the respondent is estopped from asserting a higher value. To allow him to do so would be to violate the plainest principles of fair dealing. *Hart* v. *Penn. R. R. Co.,* 112 U. S. 331, 340."

In the *Hart Case,* 112 U. S. at page 337, 5 Sup. Ct. at page 154, 28 L. Ed. 720, Mr. Justice Blatchford, speaking for the court, says: "Although the horses, being race horses, may, aside from the bill of lading, have been of greater real value than that specified in it,. whatever passed between the parties before the bill of lading was signed was merged in the valuation it .fixed   *   *.   The presumption is conclusive that if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged. The rate of freight is indissolubly bound up with the valuation.   *   *   The plaintiff cannot claim a higher valuation, on the agreed rate of freight."

In the *O'Connor Case,* 232 U. S., *supra,* Mr. Justice Lamar, at pages 515-516 (34 Sup. Ct. 380, 58 L. Ed. 703), says this: "If, on the other hand, there are alternative rates based on value, and the shipper names a value to secure the lower rate, the carrier, in the absence of something to show rebating or false billing, is entitled to collect the rate which applies to goods of that class and if sued for their loss it is liable only for the loss of what the shipper had declared them to be in class and value."

In *George N. Pierce Co.* v. *Wells, Fargo & Co.,* 236 U. S. 286, 35 Sup. Ct. 354, 59 L. Ed. 576, the law is stated thus: "Indeed, if a recovery for full value was

to be permitted in this case, the shipper itself would obtain an undue advantage in recovering such value, when it had purposely and intentionally taken the risk of less responsibility from the carrier, for a lower rate. Such result would bring about the very favoritism which it is the purpose of the commerce act to avoid."

The plaintiff's claim rests upon a violation of the law. By signing the ordinary classification he secured the lowest rate. With safe transportation he would have remained silent. The horse was injured and he repudiates his selected classification and claims indemnity for which he has paid nothing. To permit him to recover compensation under the second Cummins amendment, for injury to *other than ordinary live stock*, would be to give him an unlawful preference over shippers who obeyed the law, and would "violate the plainest principles of fair dealing."

Plaintiff was entitled to recover full actual damages to his horse, considering the horse only as *ordinary live stock*, but not as a race horse, or exposition horse. The only evidence as to the extent of the injury to the animal, as *ordinary live stock*, is that the horse was assessed for taxation at a valuation of $25.00. The jury returned a verdict for $150.00.

The judgment of the circuit court, for the reasons stated, will be affirmed.

*Affirmed.*