# Richmond.

## SOUTHERN EXPRESS CO. V. KEELER.

### March 11, 1909.

### Absent, Keith, P.

1. EXPRESS COMPANIES—*Are Transportation Companies—Code (1904), Section 1294c (24).*—An express company is declared to be a transportation company by the statute law of 'this State and is, therefore, expressly included in the terms of section 1294c. (24) of Code (1904).

2. CARRIERS—*Limiting Liability—Code (1904), Section 1294c (24).*—While at common law, a common carrier could not contract against his own negligence, he could qualify his liability as *quasi insurer* by special acceptance upon such reasonable terms and conditions as might be agreed upon with the shipper, provided they were not incompatible with his duty to the public. But it was the manifest purpose of the legislature, by the enactment of section 1294c (24) of the Code of 1904, to deprive the common carrier of the right to thus limit his liability, and to relegate him to his common law rights and responsibilities independent of contract.

3. CARRIERS—*Fraudulent Concealment of Value By Owner—Case at bar.*—The facts of the case at bar do not warrant the contention of the express company that the shipper obtained a cheaper rate for her trunk by a fraudulent concealment of its true value. The agent of the company received the trunk from the shipper and removed it from an upper to a lower floor promising to return later and remove it, without making any inquiry as to its value or imparting any information as to rates. The company was afterwards three times requested over the 'phone to call for the trunk, but neglected to do so; and it was finally sent to the express office by a negro driver. When asked the value of the trunk, the driver truthfully answered that he did not know. The company issued and delivered to the driver a bill of lading which he delivered to the shipper, with the customary stamp, "value asked and not given."

   *Held*: Fraudulent concealment cannot be predicated of such a state of facts.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case.   Judgment for the plaintiff.   Defendant assigns error.

*Affirmed.*

Statement of agreed facts in an action of trespass on the case brought by Margaret Keeler against the Southern Express Company to recover damages for the loss of a trunk:

## I.

On the 20th day of January, 1907, the plaintiff in this action was the owner of a certain trunk containing clothing, silverware, jewelry and other things enumerated below, which, together with the trunk, were of the value of four hundred dollars ($400.00).   On the said 20th day of January, 1907, the plaintiff in Petersburg, Virginia, summoned the defendant by telephone to transport the said trunk to Richmond, Virginia, but did not inform said company that the trunk was of unusual value.   The Southern Express Company sent its agent to the residence whence the summons came, and the said agent removed the trunk from the upper floor to the lower floor of the house and there left it, saying that he would call later and take it away, but no information was asked or given said agent as to the value of the trunk and the contents.   Although summoned three times to come for the trunk the Southern Express Company failed to send its agent back.   Thereupon, on the 22nd day of January, the plaintiff intrusted the trunk to a colored driver to be carried to the office of the express company.   The said colored driver, on said 22nd day of January, delivered said trunk, which was locked, to the agent of the Southern Express Company at Petersburg.   The said agent inquired of the said driver the value of said trunk.   The reply of the said driver was that he did not know.   Whereupon the agent of the defendant company did receive the said trunk for transportation

to Richmond, Virginia, and did issue to the said agent of the shipper the bill of lading, a copy of which is hereto attached by agreement of counsel, the original being lost by said plaintiff, which said bill of lading was accepted by the said driver, as agent of the plaintiff, and by said driver delivered to said plaintiff, with the words, value asked and not given, stamped on said bill of lading. At the time of the delivery of the said bill of lading to the agent of said shipper, he paid the agent of said defendant company, the sum of sixty-five cents, freight on said trunk, which weighed one hundred and fifty-five pounds.

## II.

The contents of said truck were: underwear; one black broadcloth suit; one white broadcloth suit; one gray serge suit; one white crepe de chine dress; one black velvet hat (plumes); one white hat; one brown hat; two lace waists; one black silk waist; one dozen shirt waists; one black voile skirt; one black silk underskirt; one white silk underskirt; five pair of shoes; two blankets; five pillows; collection of sterling silver souvenir spoons, between six and seven dozen; manicure set; toilet articles—brush, silver, mirrors, etc.; one gold chain purse; two fancy combs; gold pins; gold buttons; belt buckles; three chains; and also one case containing the following sterling silver; one dozen dinner knives, one dozen dinner forks, one dozen dessert forks, one dozen dinner knives, one dozen fruit knives, one dozen tea spoons, one dozen table spoons, one dozen dessert spoons, one butter knife, one sugar shell, one cream dipper, one meat fork.

The rates of freight on packages shipped from Petersburg, Virginia, to Richmond, Virginia, then established and in force by the company were, for packages of less value than fifty dollars ($50.00), the sum of forty cents (40c.) per cwt.; and on packages of greater value than fifty dollars ($50.00), the same

as the above, plus the further sum of five cents (5c.) for each one hundred dollars of the value or fraction thereof.  The State Corporation Commission of the State of Virginia had not yet formally promulgated or established any rates, but upon complaints by shippers as to express rates the Southern Express Company had been summoned before the commission and their rates inquired into, and the commission had not changed the same.  In March, 1907, the commission promulgated it rates which were the same as those formerly promulgated, fixed and charged by the express company, and these rates are now in force in the State of Virginia.

Hence if the true value of said trunk and its contents had been declared by the shipper or her agent, the value being four hundred dollars ($400.00) and the weight 155 pounds, the charge would have been sixty-five cents (65c.) according to weight, plus twenty cents (20c.)

## III.

When the trunk above mentioned was delivered to the company as aforesaid, it was promptly handled and transported from Petersburg, Virginia, to Richmond, Virginia, in the manner and way in which packages of the known value of less than fifty dollars were and usually are handled, and was, on its arrival at the latter place, promptly taken to the warehouse and office of the Southern Express Company, as is customary with such packages.

## IV.

On the night of its arrival at the said warehouse, the said warehouse and office were destroyed by fire, together with a great portion of the contents thereof.  The said fire was an accidental fire and was in no way caused by the negligence of the carrier nor of any of its servants or agents, and the said carrier, its agents and servants, used every reasonably possible exertion

to save from destruction the contents of the said warehouse, and office.

From destruction by said fire were saved all packages delivered to the defendant express company for carriage on which a value of as much as fifty dollars had been declared by the consignors, and such packages of less value as was possible to save under the circumstances.

Before the expiration of thirty days from the time when said goods were lost, the plaintiff gave the defendant notice, in writing, of her claim for the loss of said goods and chattels.

## V.

The method of handling packages in use on the lines of the Southern Express Company varies directly as the value of such packages, it giving more care to packages of great value than to packages of a lesser value.

All packages shipped from Petersburg, Virginia, to Richmond, Virginia, of a declared value of as much as fifty dollars ($50.00) are handled and transported in the following manner:

A package being offered to the company in Petersburg, at the company's office, it is weighed, and the shipper is asked the value. The rate of freight is then fixed as above mentioned, according to the published rates, and depends on the weight and on the value.

The rate being paid (or the package being sent C. O. D.), a receipt, contract or bill of lading, is issued showing the consignor, consignee, destination, origin and rate paid, the conditions and terms on which the shipment is accepted. The contract, receipt, or bill of lading in this case was in the usual form and contained the usual conditions.

The package is then taken charge of by the agent of the express company, and if a value of as much as fifty dollars ($50.00 has been declared it is especially noted on an individual way

bill showing the consignor, origin, destination, train handled on, consignee, value, rate paid, and the messenger by whom handled.

This messenger is personally responsible for the package, and is charged with the duty of taking extraordinary care thereof, and with placing it in the safest possible place, if the size permits, in a fire and burglar proof safe. In case of fire, accident or other unusual danger, he is charged with the duty of saving all valuable packages first, and then other packages if possible. In case a package has been declared of an extraordinary value, a special messenger is sent in charge of the individual package.

When the messenger in charge of a package of the value of fifty dollars ($50.00) or more, arrives at the destination of such package, or at the end of his run, he surrenders the package only when he has been given a written individual receipt for the said package, said receipt being signed by the person receiving said package.

In cases of all packages on which a value of as much as fifty dollars ($50.00) is declared, every agent and servant of the express company who handles the packages knows the value so declared, knows that there is a written proof that the said package is in his hands, and knows that he must not surrender the said package under any consideration unless he has received like written proof of him to whom he delivers it. In case of all packages of the declared value of fifty dollars ($50.00), every possible precaution is taken for their safety. This necessitates a more costly method of handling by the company of those valuable packages than is used in the handling and transportation of packages of small value.

Packages of small value are handled in the following more economical manner:

A package is offered the company, at its office, at point of

shipment, and the package weighed and valued as above described.

The rate is then fixed as above with regard to weight and value. All packages on which a value of less than fifty dollars ($50.00) has been declared are then noted on the general way bill, which show point of shipment, consignee and destination.

Such packages are not handled individually, in that they are checked only in the general run, that is, when arriving at destination or end of the messenger's run, they are called off by one messenger and checked by the other. Due care is used but not the unusual and extraordinary care that is expended on packages of greater value. No individual receipt for each package is taken, but a receipt for the general cargo is taken, and the way bills show what articles are included therein.

In case of fire or of attack or of any extraordinary danger the messenger's instructions and duty are to care first for the packages of greatest value, then for those of greater declared value than fifty dollars ($50.00), and then for those of less value.

Every messenger or other servant or agent can look at his way bills and see exactly what packages are of a value of fifty dollars or more and exactly what the value of each of these has been declared to be. All messengers or other agents or servants of the defendant company know that packages on which no value has been declared are of less than fifty dollars of value, and that the freight rate paid on such packages has been secured on such low value.

Every messenger knows that it is his duty as above described to pay every attention, ordinary and extraordinary, to the safety of the valuable packages, and to use every reasonable care to insure the safety of the packages of low value.

Every messenger or other servant of the company is chargeable personally with all losses occurring while the package lost

is in his custody and control, unless such loss can be properly explained as unavoidable.

*Copy of Bill of Lading.*

Read this contract.

### SOUTHERN EXPRESS COMPANY.

Domestic Bill of Lading.

Not Negotiable.

Petersburg, Va., January 22, 1907.

Received of *Salnn M*

Value asked and not given.

One trunk.   Valued at . . . . . . . . . . . dollars, and for which amount the charges are made by said company, marked

> Miss Margaret Keeler,
> 214 E. Main St.,

(Copy.)                                    Richmond, Va.

Which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation.

It is part of the consideration of this contract, and it is agreed that the said express company are forwarders only, and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be by said express company entrusted, or arising from the dangers of railroads, ocean or river navigation, steam, fire in stores, depots, or in transit, leakage, breakage, or from any cause whatever, unless in every case same be proved to have occurred from the fraud or gross negligence of said express company or their servants, unless specially insured by it and so specified on this receipt, which insurance shall constitute the limit of the liability of the Southern Express Company in any

event; and if the value of the property above described is not stated by the shipper at the time of shipment and specified in this receipt the holder hereof will not demand of the Southern Express Company a sum exceeding fifty dollars for loss of or damage to the shipment herein receipted for. Nor shall the said company be held responsible for the safety of said property after its arrival at its place of destination.

And if the same is instrusted or delivered to any other express company or agent (which said Southern Express Company are hereby authorized to do) such company or person so selected shall be regarded exclusively as the agent of the shipper or owner, and as such alone liable, and the Southern Express Company shall not be in any event responsible for the negligence or non-performance of any such company or person; and the shipper and owner hereby severally agree that all the stipulations and conditions in this receipt contained shall extend to and inure to the benefit of each and every company or person to whom the Southern Express Company may intrust or deliver the above described property for transportation, and shall define and limit the liability therefor of such other company or person. In no event shall the Southern Express Company be liable for any loss or damage, unless the claim therefor shall be presented to them in writing at this office, within thirty days after this date, in a statement, to which this receipt shall be annexed. All articles of glass, or contained in glass, or any of a fragile nature, will be taken at shipper's risk only, and the shipper agrees that the company shall not be held responsible for any injury by breakage or otherwise, nor for damage to goods not properly packed and secured for transportation. It is further agreed that said company shall not, in any event, be liable for any loss, damage, or detention caused by the acts of God, civil or military authority, or by insurrection or riot, or the dangers incident to a time of war.

If any sum of money, besides the charges for transportation, is to be collected from the consignee on delivery of the above

described property, and the same is not paid within thirty days from the date thereof, the shipper agrees that this company may return said property to him at the expiration of that time, subject to the conditions of this receipt, and that he will pay the charges for transportation both ways, and that the liability of this company for such property while in its possession for the purpose of making such collection, shall be that of warehouseman only.

                    For. the company,

                                        TAYLOR."

In this case, neither party demanded a jury, and the whole matter of law and fact having been submitted to the court, judgment was rendered for the plaintiff for the sum of $400, the value of the trunk.   To which judgment the Express Company brings error.

*James H. Drake, Jr.,* and *Wyndham R. Meredith,* for the plaintiff in error.

*Garnett & Pollard,* for the defendant in error.

WHITTLE, J. (after stating the foregoing facts), delivered the opinion of the court.

In its main features, this case is ruled by the decision in *Chesapeake & Ohio Railway Company* v. *Pew, ante,* p. 288, 64 S. E. 35, in which an opinion was handed down at the present term.   Both cases arose under the concluding sentence of the first paragraph of section 1294c (24), Va. Code, 1904, which provides, that "no contract, receipt, rule, or regulation shall exempt any such common carrier, railroad or transportation company from the liability of a common carrier which would exist had no contract been made or entered into."

An express company is declared to be a "transportation company," by our statute, and is, therefore, expressly included in the foregoing enactment.   Section 1294a (2).

The fundamental error in the contention in favor of the limited liability of the express company in the present instance consists in assuming that the rights of the parties are as at common law, ignoring the provisions of section 1294c (24).   It is well settled that, while at common law a common carrier could not contract against his own negligence, he could qualify his liability as *quasi insurer* by special acceptance upon such reasonable terms and conditions as might be agreed upon with the shipper, provided they were not incompatible with his duty to the public.   But it was the manifest purpose of the legislature, by the language quoted, to deprive the common carrier of the right to thus limit his liability and to relegate him to his common law rights and responsibilities, independent of contract.

It need only be observed, in conclusion, that the agreed facts do not sustained the remaining contention, that the plaintiff obtained a cheaper rate for the transportation of her trunk by fraudulent concealment of its true value.

The agent of the express company received the trunk from the owner, removing it from the upper to the lower floor of the house in Petersburg at which she was staying, and went away, promising to return for the trunk later, but without making any inquiry as to its value, or imparting any information on the subject of rates.   The company was afterwards three times requested by 'phone to call for the trunk, but neglected to do so; and it was finally sent to the express office by a negro driver. When asked the value of the trunk, the driver truthfully answered that he did not know.

Fraud cannot be predicated of such a state of facts, and the mere acquiescent acceptance by the shipper of a bill of lading prepared by the express company with the customary stamp, "value asked and not given."

We are of opinion that the judgment of the Law and Equity Court of the city of Richmond is without error, and must be affirmed.

*Affirmed.*