# Richmond

## Virginian Railway Company v. Andrew J. Calhoun.

May 4, 1959.

Record No. 4904.

Present, All the Justices.

The opinion states the case.

*Leigh D. Williams* and *Edward L. Oast, Jr.* (*Williams, Cocke, Worrell & Kelly,* on brief), for the plaintiff in error.

*Henry E. Howell, Jr.* (*Jett, Sykes & Howell,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

■ This action was brought by the plaintiff, Andrew J. Calhoun, against the defendant, Virginian Railway Company, under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51 *et seq.,* to recover damages for injuries which he alleged were caused by the negligence of the defendant. A jury returned a verdict in favor of the plaintiff for $5,000 on which the judgment appealed from was entered. The defendant assigned errors and contends first that the evidence was not sufficient to support the verdict. The evidence as the jury could have viewed it presented the following case:

On January 7, 1956, the plaintiff, who was about 32 years old and had previously done clerical work, was employed by the defendant to do clerical work as a weighmaster. His work was in a scalehouse and his duties were to weigh coal cars as they were moved from the railroad yard to the piers for loading the coal into ships and to record the net weight of the coal. Ordinarily one ship at a time was loaded from one scalehouse, but on the afternoon of November 2, 1956, the date of plaintiff's injury, two ships were to be loaded at the same time, requiring the use of two scalehouses. Accordingly, about 3 p.m., the plaintiff was ordered by the defendant's pier superintendent to take his equipment over to the seldom-used scalehouse on the south side of the tracks and "line up the switches."

This task required the plaintiff to throw the south pit switch so as to divert cars into the south pit. This was done by facing the switch, which was a mechanism anchored to the ends of two cross-ties, then bending over, taking hold of an iron lever which operated the switch, and which lay practically parallel to the ground, and moving it in a semi-circle from one side to the other. The plaintiff lifted the lever to a little beyond the vertical position where resistance was met. He pushed against it twice without being able to move it, then got over behind it and was thrusting his weight against it when it sprang back and threw him to the ground, causing his injuries.

The plaintiff had never received any instruction from the defendant as to the mechanism of the switch or as to how to throw it. He had never before received an order or had occasion to throw this south pit switch. The only other time he had thrown a switch was when another weighmaster had him throw the north pit switch, which he found to be relatively a simple matter as the lever of that switch "just flopped right on over" when it got to the point where the resistance occurred on the south pit switch. The switch usually operated by the weighmaster was an automatic air operated switch controlled from inside the scalehouse.

A weighmaster of five years' experience with the defendant testified that this south pit switch "was defective and hard for me to throw," much harder than the north pit switch. The last time he operated it was a month or two before the accident.

A third weighmaster testified that about ten o'clock on the night of November 2, 1956, after the accident, he had to go down and throw this south pit switch and found it the same as it always had been, "extremely hard" to throw; that when you threw the lever approximately three-fourths of the way over in its arc, you then had to shift around so as to apply your weight to push it down. The switch in the north pit was easier to throw and no shifting of position was required to operate it.

A piece of the castiron top covering of the switch was broken off, exposing a spring which it was designed to cover, and that condition had existed for six years or more before this accident.

A track walker had the duty of inspecting, greasing and sweeping the switches. He had 56 special switches to take care of every day and 107 altogether. He had to sweep the switches, he said, because the wind blows a whole lot of coal and dust up in them. The switches were serviced every day when he first went to work six years before, but this was changed and in 1956 this south pit switch was not inspected on Fridays and Saturdays. This accident happened on Friday, November 2. The last time he swept this switch before the accident was on Thursday morning about nine-thirty and it was in good condition then. He had been told to keep the switches around the scalehouse in better condition than any of the rest of them.

For the defendant there was evidence that the switch was in good operating condition on Monday following the accident on Friday. The track walker said he swept it on Sunday but did not grease it

and it was all right then. The section foreman, whose duty it was to maintain the switches and keep them in proper shape, said he inspected this switch sometime about October 20 or 25, and it was in good condition and was a good operating switch and nobody gave him any notice that it was out of order.

The Federal Employers' Liability Act, *supra*, provides that the railroad is liable for injury or death resulting "in whole or in part" from its negligence, or by reason of any defect or insufficiency, due to its negligence, "in its * * appliances, machinery, * * or other equipment."

In *Rogers* v. *Missouri Pacific Railroad Co.*, (1957), 352 U. S. 500, 506-7, 1 L. ed. 2d 493, 499, 77 S. Ct. 443, 448, the Supreme Court said:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. * * Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. * *." See also *Webb* v. *Illinois Central Railroad Co.*, (decided the same day), 352 U. S. 512, 1 L. ed. 2d 503, 77 S. Ct. 451; *Lavender, Adm'r, etc.* v. *Kurn et al.*, 327 U. S. 645, 90 L. ed. 916, 66 S. Ct. 740; *Wilkerson* v. *McCarthy*, 336 U. S. 53, 93 L. ed. 497, 69 S. Ct. 413.

While the view has been expressed that under these recent decisions of the Supreme Court in F.E.L.A. cases, "speculation, conjecture and possibilities suffice to support a jury verdict," *Gibson* v. *Elgin etc. Ry. Co.* (7 Cir.) 246 F. 2d 834, 837, that conclusion was repudiated by at least two of the Justices of that court in a memorandum opinion on denial of certiorari in that case, 355 U. S. 897, 2 L. ed. 2d 193, 78 S. Ct. 270.

There is considerably more than speculation and conjecture in the present case. There was affirmative evidence that the switch in question was defective and much harder to operate than the north pit switch, which was the only one the plaintiff had had any experience with and which he had operated only one time. There was uncontradicted evidence that when the plaintiff in obedience to orders undertook to operate this switch with which he was unfamiliar it would not operate as the north pit switch did, and when

he had to use his weight against the lever it kicked back and threw him to the ground. The defective condition of the switch had existed for at least one or two months, which was ample time for the defendant to have notice of it. The defendant recognized the importance of keeping this switch in good condition, yet it had not been inspected, swept or greased since the early morning of the day before the accident.

The court, at the instance of the plaintiff, instructed the jury that it was the duty of the defendant to exercise reasonable care to provide and maintain for its employees reasonably suitable and safe machinery and appliances, and if the jury believed from the evidence that the defendant failed to perform that duty, and that it knew or should have known in the exercise of reasonable care that the machinery or appliance was unsafe and defective, then it was negligent, and if such negligence proximately caused or contributed to the injury, the plaintiff was entitled to recover. The verdict of the jury in response to this instruction was adequately supported by the evidence.

The case of *Atlantic Coast Line R. Co.* v. *Collins* (4 Cir.) 235 F. 2d 805, strongly relied on by the defendant, differs materially from this in the character of the evidence, including *inter alia* the fact that the plaintiff in that case had operated the switch without any difficulty a dozen times within a few hours before he was hurt, and others operated it readily fifteen times or more within a few hours after the accident. The court said the evidence created only speculation, which was not enough, and that in the last analysis the plaintiff's case rested upon the contention that negligence must be inferred from the happening of the accident. *Cf. Atlantic Coast Line R. Co.* v. *Boartfield* (from the same court) 253 F. 2d 733.

Defendant also contends that the court erred in refusing to let it prove that the plaintiff was not in fact its employee because he had fraudulently obtained his employment. This related to the fact that in his written application for employment dated January 3, 1956, plaintiff stated that the date of his last physical examination was 1953, and he answered "No" to the question "Have you ever been injured?" The fact was that in April 1955 the plaintiff had received a lower back injury in an automobile accident.

The court refused to admit the application as a defense to the action, and refused to allow amendment to the grounds of defense to include a charge of fraudulent procurement of employment, on

the ground that the defense had not been pleaded and was offered too late.

The effort to set up the application for employment as a defense was made during the cross-examination of the plaintiff and after he had voluntarily testified about his former injury in his direct examination, in which he stated that the former injury was in the muscles near the end of his backbone, from which he recovered and went right back to work, and that the injury had no connection with the neck and shoulder injury for which the present action was brought. Plaintiff testified without contradiction that he filled out this application with the assistance of defendant's superintendent and told him about the former injury, asked him if he should list it, and was told he need not do so. It appeared also that on March 20, 1957, twenty days before the trial, plaintiff's counsel sent to defendant's general claim agent and to defendant's counsel what is denominated a settlement brief in which the former injury was referred to and the statement made that plaintiff "apparently had effected a complete recovery from this incident."

If there was any substance to the claim that the plaintiff fraudulently obtained his employment, Cf. *Minneapolis, St. P. & S. S. M. R. Co. v. Borum*, 286 U. S. 447, 76 L. ed. 1218, 52 S. Ct. 612, the facts about it were known to the defendant before the trial in ample time to have pleaded it before the trial began, and under the circumstances the court did not abuse its discretion in refusing to allow it to be interposed as a defense after the trial had begun. See *Chesapeake & Ohio Ry. Co. v. Osborne*, 154 Va. 477, 506-8, 153 S. E. 865, 873-4; Rules 3:5, 3:18.

█ Finally, the defendant says the court erred in admitting the testimony of a witness who had been employed by the defendant as a car rider for ten years and whose duty it was to instruct new car riders on how to throw switches. He testified as to what in his opinion was reasonably necessary instruction to a new man on how to throw switches. He also said that if anything gets into the switch or switch point "it makes it different."

The defendant contends that this evidence was of no probative value and that the witness was not qualified as an expert. If there was error here, which is not shown, it was harmless and the contention is without substance.

The judgment below is

*Affirmed.*